**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Scott Bennett and Brad Wilde, individually and as representatives of a class of similarly situated persons,<br><br>        Plaintiffs,<br><br>   v.<br><br>Ecolab, Inc., the Plan Administrator of the Ecolab Pension Plan, and the Ecolab Pension Plan,<br><br>        Defendants. | Case No. 0:24-cv-00546-JMB-TNL<br><br><br>**FIRST AMENDED**<br>**COMPLAINT** |

Plaintiffs Scott Bennett and Brad Wilde, by and through their attorneys, on behalf of themselves and all others similarly situated, allege the following:

**NATURE OF THE ACTION**

1.      This is a civil enforcement action brought under sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), concerning ERISA violations by Ecolab Inc. ("Ecolab") and the Plan Administrator (collectively, "Defendants"). Defendants breached ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements with respect to the Ecolab Pension Plan (the "Plan"). Plaintiffs bring this action to remedy this unlawful conduct, recover losses to the Plan, and obtain other appropriate relief.

1

**INTRODUCTION**

2.      Plaintiffs and the Class are vested participants in the Plan who accrued and receive or will receive benefits under Article 4 of the Plan. Plaintiffs and Class members receive or will receive pension benefits in the form of a joint and survivor annuity—a benefit that pays an annuity both to the participant for life and for the life of the participant's surviving spouse.[1] In determining the amount of Plaintiffs' and Class members' joint and survivor annuities, Defendants employed actuarial assumptions that are over 50 years old. As a result, Plaintiffs and Class members receive less than the "actuarial equivalent" of their vested accrued benefit, in violation of ERISA.

3.      Generally, a pension benefit is expressed as a single life annuity, meaning it pays a monthly benefit amount to the participant for the duration of their life (i.e., from the time of retirement until death).[2]

4.      For married participants, however, the default form of pension payment is a joint and survivor annuity or "JSA." Joint and survivor annuities provide participants with a monthly payment for the remainder of their lives. If a participant's spouse survives them, their spouse will continue to receive a benefit for the remainder of their life. ERISA § 205(a)–(d), 29 U.S.C. § 1055(a)–(d). There are several ways of paying out a JSA benefit. Often, the surviving spouse receives 50%, 75%, or 100% of the original benefit after the participant's death.

---

[1] *See* John Egan, *What Is A Joint and Survivor Annuity?*, Forbes (updated February 16, 2023), *available at* https://www.forbes.com/advisor/retirement/joint-and-survivor-annuity/.
[2] *Id.*

5.      To calculate a married participant's (and their spouse's) joint and survivor annuity, the Plan starts with the participant's single life annuity, then uses actuarial assumptions to convert it to a joint and survivor annuity.

6.      When plans make these actuarial conversions, several provisions of ERISA and relevant regulations require that the plans in fact provide participants with an annuity with the same economic value as the single life annuity.

7.      First, ERISA requires that joint and survivor annuities be "the actuarial equivalent of a single life annuity for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii).

8.      Actuarial equivalence is a computation designed to ensure that, all else being equal, all forms of benefit payments have the same economic value. An actuarial equivalence computation generally considers both an interest rate and the expected longevity of a participant and their spouse. The interest rate accounts for the value of future pension payments, reflecting the time value of money, while the mortality table provides the expected likelihood of that future payment being paid to the participant or their survivor based on the published tables showing the statistical life expectancy of a person at a given age.

9.      Second, ERISA § 203(a), 29 U.S.C. § 1053(a), provides that an employee's right to their vested retirement benefits is non-forfeitable and states that paying a participant less than the actuarially equivalent value of their accrued benefit results in an illegal forfeiture of vested benefits.

3

10. Echoing the statute's actuarial equivalence requirements, applicable Treasury regulations make clear that actuarial "[e]quivalence may be determined[] on the basis of consistently applied reasonable actuarial factors[.]" 26 CFR § 1.401(a)-11(b)(2).[3]

11. The Ecolab Plan violates each of these rules for married participants who accrued benefits under Article 4 of the Plan. Under the Plan, the default form of payment for unmarried participants is a single life annuity. For married participants, the default benefit is a joint and 50% survivor annuity. Instead of using the most updated mortality table as prescribed in 26 U.S.C. § 417(e) to calculate JSA benefits, Article 4 uses the Group Annuity Table from 1971.

12. Life expectancy has grown steadily since 1971. Consequently, when the Plan uses these outdated tables to convert a single life annuity to a JSA, participants and beneficiaries receive significantly less than the actuarial equivalent of their single life annuity. This is directly contrary to ERISA's requirements set forth in § 203(a) and § 205(d).

13. The Plan has two channels of benefit accrual. Employees who became participants in the Plan after January 1, 2003, accrue benefits under Article 5 of the Plan. Employees who became participants of the Plan on or before January 1, 2003, accrued benefits under Article 4 of the Plan until December 31, 2020. Pursuant to Plan amendment, after December 31, 2020, benefit accrual under Article 4 was frozen and all participants began accruing benefits under Article 5.

---

[3] The Tax Code contains numerous provisions that correspond to ERISA; here, the provision that corresponds to ERISA § 205 (29 U.S.C. § 1055) is 26 U.S.C. § 401(a)(11).

14.     Article 5 of the Plan uses updated mortality tables.

15.     Ecolab most recently revised the Plan for 2020. At that time, the most updated tables from the Treasury were from 2017, making the Plan's JSA mortality table under Article 4—the 1971 GAM table—forty-six (46) years out of date, despite massive increases in life expectancy in the intervening decades.

16.     The fact that the Plan was amended to move participants away from the outdated mortality tables used in Article 4 demonstrates that Defendants were aware that the actuarial assumptions found in Article 4 of the Plan do not pass muster. Despite this knowledge, Defendants did not update the mortality tables used in Article 4 of the Plan and have continued to pay pension benefits to Plaintiffs and Class members calculated using outdated actuarial assumptions.

17.     Although the Plan specifies the use of the 1971 mortality table, it also states that the Plan complies with all legal requirements and that the JSAs are actuarially equivalent to the participant's single life annuity. If the Plan violates ERISA, then its fiduciaries cannot validly follow its terms. 29 U.S.C. § 1104(a)(1)(D). The failure to pay married retirees pensions that have the same economic value as single retirees (or those who elect a single life annuity) violates ERISA.

18.     Because the terms of the Plan at Article 4 were not in compliance with ERISA and resulted in harm to retirees who elected JSAs, a prudent and loyal fiduciary would have taken steps to bring the Plan into compliance. For example, after becoming aware that the mortality tables used to calculate JSAs under Article 4 were out of date, a

prudent and loyal fiduciary could have re-calculated JSA benefits using up to date mortality tables and paid current retirees adjusted benefits on a going-forward basis.

19.     Defendants' failure to do this allowed them to continue to pay Plaintiffs and Class members less than their statutorily entitled benefits.

20.     The members of the Class are the participants and beneficiaries of the Ecolab Plan who became participants on or before January 1, 2003, and thus receive or will receive benefits pursuant to Article 4 of the Plan, and who receive or will receive a joint and survivor annuity. Class members are harmed by Defendants' calculation and payment of benefits that are less than the actuarial equivalent of their protected retirement benefits, in violation of ERISA.

21.     Plaintiffs bring this action on behalf of the Class pursuant to ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2), (a)(3), to recover all losses to the Plan and for all appropriate equitable and remedial relief, including but not limited to: a declaration that the Plan's actuarial assumptions used for benefits under Article 4 violate ERISA's actuarial equivalence and non-forfeitability requirements as to the Class; an injunction requiring Plan fiduciaries to ensure that the Plan pays actuarially equivalent benefits to all Class members; reformation of the Plan to provide for proper actuarial assumptions as to Class members; and recalculation of benefits for all Class members and payment to them of the amounts owed under an ERISA-compliant plan.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

23.     This Court has personal jurisdiction over Ecolab because it is headquartered in, transacts business in, employs people, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

24.     This Court has personal jurisdiction over the Plan because it is administered in and pays benefits to participants and beneficiaries in this District, and because ERISA provides for nationwide service of process.

25.     This Court has personal jurisdiction over the Plan Administrator because it is employed in, transacts business in, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

26.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the Plan is administered, where the breaches of fiduciary duties giving rise to this action occurred, and where Defendants may be found.

## THE PARTIES

### PLAINTIFF

27.     Plaintiff Scott Bennett resides in Stillwater, Minnesota and is a participant in the Ecolab Plan. He worked for Ecolab for over twenty years as an engineer and project

manager. Mr. Bennett's accrued benefit was $2,068.70. Upon retirement, Mr. Bennett elected the 100% joint and survivor annuity offered by the Plan and began receiving his monthly benefit. This benefit was calculated based on outdated assumptions about participants' and beneficiaries' longevity. Had Mr. Bennett's JSA been determined using reasonable actuarial assumptions (such as those set forth in 26 U.S.C. § 417(e)), his monthly pension payment would be larger. As a result, he suffered harm from Defendants' use of the Plan's outdated and unreasonable actuarial assumptions to determine his monthly joint and survivor annuity payment.

28.     Plaintiff Brad Wilde resides in Lakeville, Minnesota and is a participant in the Ecolab Plan. He worked for Ecolab for over 36 years as a Director of Technical Services. Mr. Wilde's accrued benefit was $5,032.86. Upon retirement, Mr. Wilde elected the 100% joint and survivor annuity offered by the Plan and began receiving his monthly benefit. This benefit was calculated based on outdated assumptions about participants' and beneficiaries' longevity. Had Mr. Wilde's JSA been determined using reasonable actuarial assumptions (such as those set forth in 26 U.S.C. § 417(e)), his monthly pension payment would be larger. As a result, he suffered harm from Defendants' use of the Plan's outdated and unreasonable actuarial assumptions to determine his monthly joint and survivor annuity payment.

**DEFENDANTS**

### *Ecolab, Inc.*

29.     Ecolab, Inc. ("Ecolab") is a public company that focuses on manufacturing in the sectors of cleaning, sanitizing, and water and energy management. It is headquartered in Saint Paul, Minnesota and does business internationally.

30.      Ecolab is the "plan sponsor" for the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B) and makes contributions to the Plan to fund retirement benefits promised under the Plan.

31.     Ecolab has the ultimate authority to control and manage the operation and administration of the Plan. As such, Ecolab is a fiduciary pursuant to 29 U.S.C § 1002(21)(A).

32.     Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), Ecolab put into force the written instrument according to which the Plan was established and maintained. This written instrument (the "Plan Document") is at issue in this case.

### *Plan Administrator of Ecolab Pension Plan*

33.     According to the Plan Document, the Administrator, as described in ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), is the "Plan Administrator."

34.     Under the Plan Document, the Plan Administrator is and was a "Named Fiduciary" of the Plan at all relevant times within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), for all respects other than investment matters. As such, the Plan Administrator has/had the authority to control and manage the operation and administration of the Plan.

35.    Based on the Plan Administrator's discretionary authority and/or discretionary responsibility for Plan administration set forth in the Plan Document, the Plan Administrator is also a Plan fiduciary within the meaning of ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).

*Ecolab Pension Plan*

36.    The Ecolab Pension Plan (the "Plan") is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

37.    Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), the Plan is established and maintained according to a written instrument (the Plan Document).

38.    The Plan was established in 1972 and most recently amended in 2020.

39.    The Plan provides retirement benefits to substantially all U.S. bargained and non-bargained employees of Ecolab, Inc. and its subsidiaries. In addition, the Plan covers employees of Nalco Company who are employed at Latin American or Caribbean locations of Nalco Company. As of the 2022 plan year, the Plan had 31,776 total participants and assets valued at approximately $1.7 billion.

40.    The Plan is joined as a nominal defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

## LEGAL BACKGROUND

### A.    Actuarial Equivalence

41.    To comply with ERISA, as well as to be considered a qualified plan under the Tax Code, a plan must adhere to specified valuation rules to ensure that, all else being

10

equal, all available forms of benefit payments have the same economic value. *See* Treas. Reg. § 1.411(a)–11(a)(1).

42.    ERISA provides that "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit[.]" § 204(c)(3), 29 U.S.C. § 1054(c)(3).

43.    ERISA defines "normal retirement age" as age 65, or younger if provided by the pension plan. ERISA § 3(24), 29 U.S.C. § 1002(24); *see also* 26 U.S.C. § 411(a)(8); Treas. Reg. § 1.411(a)–7(b).

44.    The actuarial equivalence requirement set forth in ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), is repeated in the parallel Tax Code provision. 26 U.S.C. § 411(c)(3). The Treasury regulations that construe 26 U.S.C. § 411(c)(3) likewise confirm the actuarial equivalence rule. 26 C.F.R. § 1.411(c)-1(e) (referring to the "actuarial equivalence" of the participant's accrued benefit in conformance with Treasury regulations).

45.    In addition to the valuation rules referenced above, to comply with ERISA and to be considered a qualified trust under the Tax Code, a plan must adhere to certain actuarial equivalence rules. 26 CFR § 1.401(a)-11(a)(1).

46.    ERISA provides that a JSA shall be *the actuarial equivalent of a single annuity* for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), 1055(d)(2)(A)(ii) (emphasis added). This definition is repeated in the Tax Code provision of ERISA at 26 U.S.C. § 417(b)(2) (defining "Qualified Joint and Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the

participant") and § 417(g)(2) (defining "Qualified Optional Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant").

47.     Similarly, the Treasury regulations concerning JSAs require that a "qualified joint and survivor annuity *must be at least the actuarial equivalent* of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan. Equivalence may be determined, on the basis of *consistently applied reasonable* actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2) (emphasis added).

48.     Treasury regulations further explain, "in the case of a married participant, the QJSA [Qualified Joint and Survivor Annuity] must be *at least as valuable as any other optional form of benefit payable under the plan at the same time.*" 26 C.F.R. § 1.401(a)-20 Q&A-16 (emphasis added).

49.     In effect, the default and optional forms of pension annuity paid to a married participant should have the same value as the default form of pension of an analogous unmarried co-worker, or any other optional benefit available to the retiree.

50.     For the value of joint and survivor benefits to be equivalent, the assumptions used to perform an actuarial equivalence computation must be reasonable.

51.     The Treasury provides reasonable interest rates and mortality tables that are regularly updated. *See* 26 U.S.C. § 417(e)(3). These interest rates and mortality tables provide a reference point that ensures actuarial equivalence for the conversion of benefits among different forms.

**B.      Non-Forfeitability**

52.      ERISA § 203(a), 29 U.S.C. § 1053(a), sets forth "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is non-forfeitable upon the attainment of normal retirement age[.]"

53.      The Treasury regulation which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements," 26 C.F.R. § 1.411(a)-4(a), states that "*adjustments in excess of reasonable actuarial reductions*, can result in rights being forfeitable." (emphasis added).

54.      Thus, distribution of retirement benefits that are *less* than their actuarial equivalent value constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a).

## FACTUAL ALLEGATIONS

**I.      The Plan Employed Highly Outdated and Unreasonable Actuarial Assumptions in Determining Class Members' Benefits, Resulting in Significant Harm**

55.      Though the Plan Document purports to comply with ERISA and all other applicable law, the Plan does not in fact pay joint and survivor annuities to Class members that are the "actuarial equivalent" of single life annuities.

56.      Under the Plan, the default form of payment for unmarried participants is a single life annuity. Participants with a single life annuity receive a monthly benefit payment beginning at retirement and continuing until death.

13

57. The default form of payment for married participants is a 50% joint and survivor annuity. This means the participant's surviving spouse receives 50% of the amount of the annuity that the participant received during their lifetime.

58. Participants may also elect one of several optional forms of benefits, including a 75% JSA or 100% JSA, 60- or 120-months' payments guaranteed annuity (an annuity that guarantees a set number of years of payments, even if the participant dies before all payments have been made), a single life annuity, or a lump sum. Married participants must obtain the consent of their spouse before electing a single life annuity, 60- or 120-months' payments guaranteed annuity, or lump sum payment. Married participants do not need the consent of their spouse to select the 75% JSA or 100% JSA.

59. In certain circumstances, the spouse of a participant who dies before retirement benefits commence is entitled to what is called a "Pre-Retirement Death Benefit" in the Plan Document. As required by ERISA § 205(e), 29 U.S.C. § 1055(e), this pre-retirement survivor annuity provides the surviving spouse an annuity equal to the survivor annuity portion of the qualified joint and survivor annuity the participant would have been entitled to had he not died.

60. Because the amount of the pre-retirement survivor annuity is simply a reflection of how the Plan calculates the JSA the participant would otherwise have received, the manner in which the Plan calculates JSAs impacts the Plan's calculation of pre-retirement survivor annuities. Thus, the pre-retirement survivor annuities are also not the actuarial equivalent of single life annuities. Recipients of these annuities are therefore included in the proposed class.

14

61.    To calculate JSA benefits for participants and their beneficiaries under Article 4, the Plan converted the participant's single life annuity using the following assumptions:

(a) Interest Rate: 7.5%
(b) Mortality: 1971 Group Annuity Table
(c) Annuity values weighted: 75% male, 25% female

62.    The 1971 Group Annuity Table ("GAM-71") is a mortality table developed by the Group Annuity Mortality Committee from the Society of Actuaries (SOA) in 1971. It was developed based on mortality experience data among insured group annuitants over the years 1964 to 1968.[4]

63.    In the over 50 years since the GAM-71 was developed, the SOA has issued numerous mortality tables that are based on more recent mortality experience, including, most recently the RP-2023. The mortality tables are periodically updated to reflect Americans' actual mortality experience, which has improved steadily from factors such as changes in lifestyle and medical advancements.

64.    The Treasury is required to update its own mortality tables at least every ten years. 26 U.S.C. § 30 (h)(3)(B). These tables are "based on the actual experience of pension plans and project trends" and are based on input from many sources including the SOA. 26 U.S.C. § 430 (h)(3)(A).

---

[4] *See* Society of Actuaries, *Mortality and Other Tables: 1971 Group Annuity Mortality (GAM) Table*, available at https://mort.soa.org/ViewTable.aspx?&TableIdentity=817.

65. The Plan, however, continues to use outdated mortality assumptions when calculating joint and survivor benefits for participants under Article 4. It thus assumes participants are likely to die sooner than recent actuarial experience data supports.

66. Calculations for joint and survivor annuities using updated and reasonable mortality assumptions, such as those prescribed under 26 U.S.C. § 417(e) and supplied by the Treasury, are significantly more favorable to Class members than the current calculations under Article 4.

67. Plaintiff Bennett, for example, is receiving $33.02 less every month than he would otherwise receive if the Plan used reasonable calculations. Unless it is corrected, he will experience this pension shortfall every month for the rest of his life.

68. Plaintiff Wilde, for example, is receiving $240.12 less every month than he would otherwise receive if the Plan used reasonable calculations. Unless it is corrected, he will experience this pension shortfall every month for the rest of his life.

69. In the aggregate, the Plan's failure to provide actuarially equivalent joint and survivor annuities has caused Class members to lose millions of dollars in benefits.

70. It is unreasonable and contrary to ERISA for Defendants to fail to pay Plan participants and beneficiaries actuarially equivalent benefits.

71. Ecolab acted imprudently and disloyally when it used outdated and unreasonable mortality tables to calculate JSA benefits. Although not a named fiduciary in the Plan Document, Ecolab is the Plan Sponsor and exercises "discretionary authority [and] discretionary control" of the plan, making it a plan fiduciary pursuant to 29 U.S.C § 1002(21)(A).

72.     The Plan Administrator, as the Plan's named fiduciary, was responsible for calculating and paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violate ERISA, in which case ERISA's fiduciary duties required the Plan Administrator to act in accordance with ERISA rather than the Plan. *See* 29 U.S.C. § 1104(a)(1)(D).

73.     Because ERISA requires that plan fiduciaries treat all plan participants equally and equitably, the Plan Administrator must act loyally and prudently to ensure that all participants are receiving the actuarial equivalent of their single life annuity. Despite having authority under the Plan to update the Plan's actuarial assumptions and knowing that the mortality table used in Article 4 was out of date, the Plan Administrator breached its fiduciary duties by continuing to calculate joint and survivor benefits using the Plan's outdated and unreasonable assumptions. This breach penalizes participants for being married, compared to those who are single at retirement and thus receive an unreduced single life annuity.

## II.     The Plan Uses Updated Actuarial Assumptions for Other Purposes

74.     For the purposes of a plan sponsor's minimum funding of pension benefits, ERISA requires that "the determination of any present value or other computation under this section shall be made on the basis of actuarial assumptions and methods—(A) each of which is reasonable (taking into account the experience of the plan and reasonable expectations), and (B) which, in combination, offer the actuary's best estimate of anticipated experience under the plan." ERISA § 303(h), 29 U.S.C. § 1083(h).

75. The Plan's minimum funding requirements were determined for 2020 using mortality assumptions from an updated mortality table. *See* Ecolab Pension Plan 2020 Form 5500, at Notes to Financial Statements p. 13 (stating that the Plan's minimum funding requirements use projection Scale MP-2020 for Plan Year 2020).

76. Indeed, for all other benefit calculations requiring the use of actuarial assumptions, the Plan applies the reasonable and regularly updated actuarial assumptions established pursuant to 26 U.S.C. § 417(e). The Plan states that, in accordance with the law, for all lump sum calculations and all actuarial conversions under Article 5, the Plan will use the "applicable mortality table, within the meaning of Code section 417(e), in effect as of the date of distribution as prescribed by the Commissioner of Internal Revenue." Ecolab Pension Plan 2020 Form 5500, at Schedule SB Attachment, Schedule SB line 24 (stating that lump sum payments use the 2020 plan year IRC section 417(e)(3) mortality table).

77. Despite moving other participants away from the outdated mortality tables used in Article 4, Defendants failed to calculate Plaintiffs' and Class members' JSAs using updated mortality tables. Defendants knew how the outdated mortality tables affected these participants' benefits calculations but took no steps to cure the violation.

78. In other words, the actuarial assumptions the Plan uses for ERISA's minimum funding requirements, lump sum payments, and benefits accrued under Article 5 assume significantly greater longevity than the actuarial assumptions used to convert joint and survivor annuities under Article 4.

79.     The Plan does not use "reasonable" actuarial assumptions based on "the experience of the plan and reasonable expectations" and which "offer the actuary's best estimate of anticipated experience under the plan" when calculating Class members' joint and survivor annuities. Other Plan participants are receiving or will receive actuarially equivalent benefits, whereas Class members will not. Thus, the Plan improperly reduces benefits for Class members and does not comply with ERISA regulations.

80.     Furthermore, by acknowledging that they will use the most updated tables as prescribed by the Treasury for other actuarial conversions, Defendants have demonstrated awareness that they are not providing Plaintiffs and Class members an actuarially equivalent joint and survivor annuity.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and participants in and beneficiaries of the Plan who had some or all of their benefits calculated pursuant to the actuarial assumptions in effect under Article 4, and who are receiving or will receive a joint and survivor annuity (or, for beneficiaries whose spouse died before commencing benefits, a pre-retirement survivor annuity) which is less than the value of the single life annuity converted to a joint and survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e).

## I.    Numerosity

82.     The members of the Class are so numerous that joinder of all members is impractical. Based on available government filings, there were 5,152 total participants

19

receiving benefits at the end of the Plan year 2022. To the best of Plaintiffs' knowledge based on the available information, the Class includes thousands of individuals.

## II.    Commonality

83.    There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

a.    Whether the actuarial assumptions used to determine the value of the joint and survivor annuities paid to Class members violate the actuarial equivalence requirements of ERISA.

b.    Whether those assumptions illegally caused Class members to forfeit their vested benefits.

c.    Whether the Plan Administrator violated its ERISA fiduciary duties of loyalty, prudence, and to follow the Plan Document *only if* its terms are consistent with ERISA.

d.    Whether the Plan Administrator should be enjoined from applying the outdated actuarial assumptions to the Class and instead be required to calculate benefits for Class members based on reasonable actuarial equivalence determinations, including the assumptions it applies to those who chose lump sum payments or accrued benefits pursuant to Article 5.

e.    Whether the Plan should be reformed to eliminate any actuarial assumptions which reduce pension paid or payable to Class members below the actuarial equivalent value of those benefits.

f.      Whether Class members should be paid additional benefits under the Plan as reformed to provide them the difference between the benefit the Plan previously determined to be their reduced benefit and the actuarially equivalent value of their benefit.

## III.    Typicality

84.    Plaintiffs' claims are typical of the claims of the members of the Class because they arise out of the same policies and practices as alleged herein, and all members of the Class are affected by Defendants' wrongful conduct.

## IV.    Adequacy

85.    Plaintiffs will fairly and adequately represent the Class, and they have retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

## V.    Rule 23(b)(1)

86.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions would create a risk of establishing incompatible standards of conduct for Defendants.

87.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

## VI.   Rule 23(b)(2)

88.     Class action status is also warranted under Rule 23(b)(2) because Defendants have acted vis-à-vis the Plan as a whole, which should result in recovery of losses to the Plan and appropriate final injunctive, declaratory, or other appropriate equitable or remedial relief with respect to the Class as a whole.

89.     Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each Class member equally.

## VII.   Rule 23(b)(3)

90.     If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include those listed above in Section II.

91.     There are no difficulties in managing this case as a class action.

### CAUSES OF ACTION

**COUNT I:**
**Violation of the Joint and Survivor Annuity Requirement of ERISA § 205,**
**29 U.S.C. § 1055**
**(Against All Defendants)**

92.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

93.    ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d) requires that all plans shall provide benefits in the form of a "Qualified Joint and Survivor Annuity" and "Qualified Optional Survivor Annuity," and ERISA § 205(d), 29 U.S.C. § 1055(d) provides that they must be "the actuarial equivalent of a single annuity for the life of the participant."

94.    Treasury regulations setting forth plan requirements provide that a "qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan … determined, on the basis of consistently applied reasonable actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2).

95.    In other words, ERISA § 205(a)-(d) requires that at the time a participant retires, if she takes her benefit as a joint and survivor annuity, the value of the joint annuity must be no less than the actuarial equivalent of her single life annuity.

96.    As explained above, the actuarial assumptions applicable to Class members' joint and survivor annuities reduced Class members' benefits to less than the actuarial equivalent value of their ERISA protected benefits expressed as the single life annuity at the same retirement date, and they are based on different actuarial assumptions than the Plan uses for determining its funded status and for calculating other forms of benefits, as well as the assumptions the Plan has used to calculate all benefits accrued under Article 5.

97.    Thus, the Plan's actuarial assumptions for joint and survivor annuities applicable to Class members violate ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

98.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any

23

provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

99.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 205, 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

100.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

101.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

102.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiffs seek all available and appropriate remedies against Defendants to redress violations of ERISA § 205, 29 U.S.C. § 1055 described herein, including, but not limited to, the relief set forth below in the Prayer for Relief.

**COUNT II:**
**Violation of the Actuarial Equivalence Requirements of ERISA § 204,**
**29 U.S.C § 1054 (Against All Defendants)**

103.   Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

104.   ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) requires that "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [here 65] … the employee's accrued benefit … shall be the actuarial equivalent of such benefit[.]"

105.   Thus, under ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), if a participant takes her benefit as a JSA, and the Plan reduces the participant's benefit, the reduced benefit must be the actuarial equivalent of that benefit expressed as a single life annuity benefit starting at age 65. Separately, ERISA § 205, 29 U.S.C. § 1055, requires that, at the time a participant retires, if she takes her benefit as a joint and survivor annuity, the value of the joint annuity must be no less the actuarial equivalent of the single life annuity payable at retirement, even if the participant retires early. *See* Count I, *supra*. Thus, Count I provides an independent claim from Count II, which is based on a comparison of the value of a participant's annuity on the date the participant retires to her annuity at normal retirement age, even if she retires early.

106.   Relevant here, in determining the joint and survivor annuities for Class members, the Plan applied actuarial assumptions that were highly unreasonable and out of date, resulting in the payment of less than the actuarial equivalent of a participant's single life annuity.

25

107. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title of the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

108. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

109. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

110. ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

111. Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiffs seek all available and appropriate remedies against Defendants to redress violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to, the relief set forth below in the Prayer for Relief

26

**COUNT III:**
**VIOLATION OF THE ANTI-FORFEITURE RULES OF ERISA § 203, 29 U.S.C. § 1053**
**(Against All Defendants)**

112.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

113.    ERISA § 203(a), 29 U.S.C. § 1053(a), sets forth ERISA's "Nonforfeitability requirements," which provides that "an employee's right to his normal retirement benefit is non-forfeitable[.]" The Treasury regulation, 26 C.F.R. § 1.401(a)-14(c), which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements," states that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."

114.    Thus, paying a participant less than the actuarial equivalent of her accrued vested benefit results in an illegal forfeiture of her vested benefits. ERISA § 203(a), 29 U.S.C. § 1053(a).

115.    As explained above, Class members received less than the actuarial equivalent of their benefits (expressed as single life annuities) because the Plan's actuarial assumptions for calculating Class members' joint and survivor annuities provided them with less than the actuarial equivalent of their ERISA-protected benefits.

116.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

27

117.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 203(a), 29 U.S.C. § 1054(a) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

118.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

119.   ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

120.   Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiffs seek all available and appropriate remedies against Defendants to redress violations of ERISA § 203(a), 29 U.S.C. § 1054(a) described herein, including, but not limited to, the relief set forth below in the Prayer for Relief.

## COUNT IV:
### Breaches of Fiduciary Duty (Against the Plan Administrator)

121.   Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

28

122.    During all relevant times, the Plan Administrator was a named fiduciary of the Plan and was responsible for paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA.

123.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires the Plan Administrator, charged with paying benefits consistently with ERISA's requirements, to act loyally in the best interest of all Plan participants, including the Class members. This duty further requires the Plan Administrator to communicate with Plaintiffs and other Plan participants honestly and accurately.

124.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that the Plan Administrator, charged with paying benefits consistently with ERISA's requirements, act prudently when determining benefits owed to Plan participants, which includes ensuring that all benefits paid pursuant to the Plan conformed with ERISA's statutory requirements and Treasury regulations.

125.    ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires that a fiduciary with respect to a plan shall discharge their duties "solely in the interest of participants and beneficiaries and … in accordance with the documents and instruments governing the plan" insofar as such documents are "consistent with" subchapters I and III of ERISA.

126.    The Plan Administrator breached these fiduciary duties by, *inter alia:*

a.    Disloyally and knowingly reducing Class members' pension benefits through continual application of outdated and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which: (i) resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefits and (ii) enabled Ecolab, as

Plan Sponsor, to save money by reducing the amount it contributed and contributes to the Plan to fund benefits;

b.      Disloyally and knowingly providing inaccurate and misleading information to Class members by misrepresenting that the joint and survivor annuities paid by the Plan were the "Actuarial Equivalent" of a participant's single life annuity and by failing to tell Plan participants that the joint and survivor annuities—which are the presumptive options for married participants—are worth less than the single life annuities available at retirement;

c.      Failing to act prudently when determining benefits owed to Plan participants by, *inter alia*, ensuring that all benefits paid are/were in conformity with ERISA's requirements set forth in 29 U.S.C. §§ 1053, 1054, and 1055, which caused Class members to receive less than the full value of their ERISA-protected accrued benefit and violated the Plan Administrator's duty of prudence set forth at 29 U.S.C. § 1104(a)(1)(B);

d.      Failing to update the unreasonable and outdated assumptions applied to Class members' benefits, despite having actual or constructive knowledge of the deficiencies in those assumptions and discretionary authority under the Plan's terms to update the assumptions;

e.      Following Plan terms that violate ERISA (29 U.S.C. §§ 1053, 1054, and 1055), which constitutes a fiduciary breach, 29 U.S.C. § 1104(a)(1)(D), and results in participants receiving less than the actuarial equivalent of their vested accrued benefit and also results in participants forfeiting a portion of their vested accrued benefit.

30

127.    As a direct and proximate result of these fiduciary breaches, Class members lost millions of dollars in vested accrued pension benefits.

128.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

129.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available equitable relief against the Plan Administrator to redress its violations of ERISA and provide all appropriate relief to Plan participants, including but not limited to the relief requested below in the Prayer For Relief.

130.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

131.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

132.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiffs seek all available and appropriate remedies against the Plan

Administrator to redress violations of ERISA § 404, 29 U.S.C. § 1104 described herein, including, but not limited to, the relief set forth below in the Prayer for Relief.

## PRAYER FOR RELIEF

Plaintiffs pray that judgment be entered against Defendants on all claims and seeks the following relief.

A.    A declaratory judgment that the Plan's actuarial assumptions for joint and survivor annuities applicable to the Class violate ERISA's actuarial equivalence requirement set forth in § 204(c)(3), 29 U.S.C. § 1054(c)(3) and violate ERISA's anti-forfeiture provision at § 203(a), 29 U.S.C. § 1053(a).

B.    A declaratory judgment that the Plan's actuarial assumptions for joint and survivor annuities applicable to the Class violate ERISA's joint and survivor annuity requirements set forth in § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

C.    A declaratory judgment that the Plan Administrator breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, following Plan terms that violated ERISA and for failing to pay benefits to all Plan participants in conformance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

D.    Reformation of the Plan to: (i) provide that Class members receive the same updated actuarial assumptions that apply to those accruing benefits under Article 5; (ii) bring the Plan into full compliance with ERISA; and (iii) pay all benefits owed to Class members based on the reformed plan.

E.    An injunction ordering Defendants to: (i) accurately disclose to all Class members their default and optional forms of benefits as recalculated under the Reformed Plan, whether or not that individual has started collecting pension benefits; (ii) eliminate and bar any future use of actuarial assumptions that result in less than the actuarial equivalent value of the participant's single life annuity at retirement; (iii) bring the Plan into compliance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d); and (iv) recalculate and pay all amounts owed to Class members as a result of the violations of ERISA set forth herein.

F.    An order requiring Defendants to provide an accounting of all prior payments of benefits to the Class under the Plan for which the outdated and unreasonable assumptions discussed herein were used to determine joint and survivor annuities, and recalculate those payments to Class members in compliance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

G.    Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to pay future benefits in accordance with §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

H.    Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

I.    Restitution of all amounts Defendants kept in the Plan but were obliged to pay to Plaintiffs and other Class members in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

J.    Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of the violations of ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

K.    An order estopping Defendants from applying to the Class the actuarial assumptions that violate ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d) and requiring Defendants instead to pay benefits in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

L.    Relief to the Plan from the Plan Administrator for its violations of ERISA § 404, 29 U.S.C. § 1104, including a declaration that the actuarial assumptions applied to Class members' joint and survivor annuities violate ERISA §§ 203(a), 204(c)(3), and 205(a)–(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)–(d); restoration of losses to the Plan and its participants caused by the Plan Administrator's fiduciary violations, disgorgement of any benefits and profits the Plan Administrator received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to Class members caused by fiduciary breach so that those amounts owed to can be provided to Plan participants; and all appropriate injunctive relief, such as an order requiring the Plan Administrator

34

to pay all Plan participants fully ERISA-compliant benefits in the future and to ensure that all benefits it pays to participants conform to the requirements set forth in ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

M.    An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law.

N.    An award of Plaintiffs' attorneys' fees, expenses and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

O.    An award of such other and further relief as the Court deems equitable and just.

Dated: June 14, 2024          **NICHOLS KASTER, PLLP**

s/ Brock J. Specht
Paul J. Lukas, MN Bar No. 022084X
Brock J. Specht, MN Bar No. 0388343
Steven J. Eiden, MN Bar No. 0402656
Mary Clare Mulcahy, MN Bar No. 0403442
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
plukas@nka.com
bspecht@nka.com
seiden@nka.com
mcmulcahy@nka.com

**FEINBERG, JACKSON, WORTHMAN & WASOW, LLP**
Todd Jackson (Cal. Bar. No. 202598), admitted PHV
Nina Wasow (Cal. Bar No. 242047), admitted PHV
2030 Addison Street Suite 500
Berkeley, CA 94704
Telephone: 510-269-7998
Facsimile: 510-269-7994
todd@feinbergjackson.com
nina@feinbergjackson.com


Mary Bortscheller, MN Bar No. 0399634
2112 Broadway Street NE
Suite 225, #137
Minneapolis, MN 55413
Telephone: 510-606-5129
mary@feinbergjackson.com

*Counsel for Plaintiffs and the proposed Class*

36