# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

SCOTT BENNETT, BRAD WILDE, and
DAVID STATTON, individually and as
representatives of a class of similarly
situated persons,

      Plaintiffs,

    v.

ECOLAB, INC., THE PLAN
ADMINISTRATOR OF THE ECOLAB
PENSION PLAN, and THE ECOLAB
PENSION PLAN,

      Defendants.

Case No. 0:24-CV-00546-JMB-SGE

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS <u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................1

II.     BACKGROUND ..........................................................................................................2

        A.      The Terms Of The Ecolab Pension Plan..........................................................2

                1.      Early Retirement Under The Plan..........................................................3

                2.      Joint And Survivor Annuities Under The Plan .....................................4

        B.      Plaintiffs' Benefits ...........................................................................................5

                1.      Plaintiff Bennett Commenced Benefits Early At Age 55 ....................5

                2.      Plaintiff Wilde Commenced Benefits Early At Age 59.........................7

                3.      Plaintiff Statton Commenced Benefits At Age 66 ................................8

        C.      Plaintiffs' Claims And The Relevant Statutory Provisions ..............................9

III.    ARGUMENT ..............................................................................................................11

        A.      Plaintiffs Bennett And Wilde Lack Article III Standing................................11

                1.      Legal Standard ....................................................................................11

                2.      Plaintiffs Bennett And Wilde Have Not Suffered An Injury-In-Fact
                        Because Their Benefits Under The Plan Are Greater Than They Would
                        Be Using The Section 417(e) Assumptions .........................................12

                3.      The Accrued Benefit, Not The Early Retirement Benefit, Is The Starting
                        Point For Calculating Actuarial Equivalence .....................................15

                4.      Bennett And Wilde Cannot Obtain Constitutional Standing As
                        Representatives Of The Plan Or Through Statton ................................17

        B.      Rule 12(b)(6) Mandates Dismissal Of Plaintiffs' Remaining Claims ...........19

                1.      Rule 12(b)(6) Standard .......................................................................19

                2.      The SAC Does Not Allege Any Facts About Statton's Accrued Benefit
                        Warranting Dismissal Of His Statutory Violation Claims..................20

                3.      Count IV, The Breach Of Fiduciary Duty Claim, Must Be Dismissed
                        Because It Does Not Challenge Fiduciary Conduct............................23

                4.      Count IV Is Time-Barred By ERISA's Statute Of Repose................24

IV.     CONCLUSION ...........................................................................................................30

## TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. Wells Fargo & Co.*,
967 F.3d 767 (8th Cir. 2020) ................................................................................ 30

*Allen v. Wright*,
468 U.S. 737 (1984) ............................................................................................... 18

*In re Am. Hous. Found.*,
543 B.R. 245 (Bankr. N.D. Tex. 2015) ................................................................. 28

*ARRM v. Piper*,
367 F. Supp. 3d 944 (D. Minn. 2019) ................................................................... 12

*Ashanti v. City of Golden Valley*,
666 F.3d 1148 (8th Cir. 2012) ............................................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 19, 22

*Atkins v. Nw. Airlines, Inc.*,
967 F.2d 1197 (8th Cir. 1992) ......................................................................... 10, 17

*Belknap v. Partners Healthcare Sys., Inc.*,
588 F. Supp. 3d 161 (D. Mass. 2022) ................................................... 10, 16, 20, 21

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 19

*Berry v. St. Louis Pub. Sch.*,
2024 WL 5660823 (E.D. Mo. Mar. 19, 2024), *aff'd*, 2025 WL 1164223 (8th Cir. Apr.
22, 2025) ........................................................................................................... 26, 28

*Branson Label, Inc. v. City of Branson*,
793 F.3d 910 (8th Cir. 2015) ................................................................................. 12

*Cattin v. Gen'l Motors Corp.*,
955 F.2d 416 (6th Cir. 1992) ................................................................................. 10

*China Agritech v. Michael H. Resh*,
584 U.S. 732 (2018) ......................................................................................... 27, 29

*City of Clarkson Valley v. Mineta*,
495 F.3d 567 (8th Cir. 2007) ................................................................................. 12

*Covic v. FedEx Corp.*,
774 F. Supp. 3d 954 (W.D. Tenn. 2024), *appeal filed*, No. 24-5945 (6th Cir. 2024) ......................... 20

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014) .................................................................................................... 27

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ................................................................................................ 11

*Dittmer Props., L.P. v. FDIC*,
708 F.3d 1011 (8th Cir. 2013) ....................................................................... 6, 19, 20

*Drummond v. S. Co. Servs., Inc.*,
2024 WL 4005945 (N.D. Ga. July 30, 2024), *appeal filed*, No. 24-12773 (11th Cir.
2024) ......................................................................................................................... 20

*Dzinglski v. Weirton Steel Corp.*,
875 F.2d 1075 (4th Cir. 1989) ................................................................................ 23

*Engers v. AT&T*,
2022 WL 32159586 (D.N.J. Oct. 17, 2022) ........................................................... 11

*Esden v. Bank of Boston*,
229 F.3d 154 (2d Cir. 2000) .................................................................................... 21

*Gagliano v. Reliance Standard Life Ins. Co.*,
547 F.3d 230 (4th Cir. 2008) .................................................................................. 23

*Gorog v. Best Buy Co.*,
760 F.3d 787 (8th Cir. 2014) .................................................................................. 19

*Graffiti Ent., Inc. v. Speed Com. Inc.*,
2014 WL 5795477 (D. Minn. Nov. 6, 2014) ........................................................... 12

*Hogan v. Pilgrim's Pride Corp.*,
73 F.4th 1150 (10th Cir. 2023) ............................................................................... 29

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) ................................................................................................ 23

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178 (2020) ................................................................................................ 24

*Johnson v. Franco*,
727 F.2d 442 (5th Cir. 1984) .................................................................................. 17

*Knowles v. TD Ameritrade Holding Corp.*,
2 F.4th 751 (8th Cir. 2021) ..................................................................................... 30

*Korman v. Consol. Edison Co. of N.Y., Inc.*,
915 F. Supp. 2d 359 (E.D.N.Y. 2013) ................................................................. 6, 20

*Larson v. Allina Health Sys.*,
350 F. Supp. 3d 780 (D. Minn. 2018) ..................................................................... 30

*Leachman v. Beech Aircraft Corp.*,
   694 F.2d 1301 (D.C. Cir. 1982) ................................................................ 26

*In re Lehman Bros. Secs. & ERISA Litig.*,
   800 F. Supp. 2d 477 (S.D.N.Y. 2011) ...................................................... 28

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ................................................................................. 23

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   939 F. Supp. 2d 360 (S.D.N.Y. 2013) ...................................................... 28

*Miller v. Thurston*,
   967 F.3d 727 (8th Cir. 2020) ............................................................. 11, 18

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
   23 F. Supp. 3d 203 (S.D.N.Y. 2014) ........................................................ 28

*Morrison v. MoneyGram Int'l, Inc.*,
   607 F. Supp. 2d 1033 (D. Minn. 2009) .................................................... 20

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*,
   764 F.3d 1199 (10th Cir. 2014) ............................................................... 25

*Parmer v. Land O'Lakes, Inc.*,
   518 F. Supp. 3d 1293 (D. Minn. 2021) .................................................... 30

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ................................................................................. 23

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013) ................................................................. 27, 28

*Reichert v. Bakery, Confectionary, Tobacco Workers & Grain Millers Pension Comm.*,
   No. 2:23-cv-12343, Dkt. 36 (E.D. Mich. April 17, 2024), *appeal filed*, No. 24-1442
   (6th Cir. 2024) ........................................................................................ 20

*Ret. Sys. v. ANZ Secs., Inc.*,
   582 U.S. 497 (2017) ........................................................................ 25, 27, 28

*Schultz v. Windstream Commc'ns, Inc.*,
   600 F.3d 948 (8th Cir. 2010) ................................................................... 23

*Scott v. AT&T Inc.*,
   2025 WL 1903673 (N.D. Cal. July 9, 2025) ........................................... 24

*Sec'y of Lab. v. Macy's, Inc.*,
   2022 WL 407238 (S.D. Ohio Feb. 10, 2022) .......................................... 24

*Smith v. U.S. Bancorp*,
   No. 18-3405, 2019 WL 2644204 (D. Minn. June 27, 2019) .................. *passim*

*Se. Pa. Trans. Auth. v. Orrstown Fin. Servs. Inc.*,
  12 F.4th 337 (3d Cir. 2021) ................................................................................. 29

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................. 11, 12, 15

*Sunder v. U.S. Bancorp Pension Plan*,
  586 F.3d 593 (8th Cir. 2009) ............................................................................. 21

*Thole v. U.S. Bank, Nat'l Ass'n*,
  873 F.3d 617 (8th Cir. 2017), *aff'd sub nom. Thole v. U.S. Bank N.A.*, 590 U.S. 538
  (2020) ............................................................................................................. *passim*

*Thorne v. U.S. Bancorp*,
  2021 WL 1977126 (D. Minn. May 18, 2021) .................................................... 15

*Tilley v. Mead Corp.*,
  927 F.2d 756 (4th Cir. 1991) ............................................................................. 11

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ..................................................................................... 15, 19

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) (Roberts, C.J., concurring) ........................................ 11, 19

*Zean v. Fairview Health Servs.*,
  858 F.3d 520 (8th Cir. 2017) ............................................................................... 3

**Statutes**

26 U.S.C. § 417 ......................................................................................... *passim*

28 U.S.C. § 2072 .................................................................................................. 28

29 U.S.C. § 1002 ..................................................................................... 3, 10, 16

29 U.S.C. § 1053 ......................................................................................... *passim*

29 U.S.C. § 1054 ......................................................................................... *passim*

29 U.S.C. § 1055 ......................................................................................... *passim*

29 U.S.C. § 1083 .................................................................................................. 20

29 U.S.C. § 1113 ........................................................................................... 24, 30

29 U.S.C. § 1393 .................................................................................................. 20

**Other Authorities**

Fed. R. Civ. P. 12 ......................................................................................... *passim*

## I.     INTRODUCTION

Through the Second Amended Complaint (Dkt. 114, "SAC"), Plaintiffs attempt for the third time to sustain a claim challenging the actuarial assumptions in the Ecolab Pension Plan ("Plan").  After two amendments and two more named Plaintiffs added to the case, Plaintiffs' pleading is a patchwork quilt of untimely claims and implausible allegations stitched together with claims asserted by named Plaintiffs who lack Article III standing.  This SAC cannot withstand scrutiny or hang together.

The Court should dismiss the SAC for three primary reasons: (i) Plaintiffs Bennett and Wilde have not suffered an Article III injury-in-fact and thus lack standing to press their claims; (ii) Plaintiff Statton's statutory violation claims warrant dismissal under Federal Rule of Civil Procedure 12(b)(6); and (iii) the breach of fiduciary duty claim fails as a matter of law because the conduct challenged is not fiduciary in nature and the claim is time-barred.

*First*, Bennett and Wilde's claims must be dismissed for lack of constitutional standing because neither has suffered an injury-in-fact.  The benefits both are currently receiving pursuant to the Plan's terms are greater than the benefits they would receive by using the actuarial assumptions set forth in 26 U.S.C. § 417(e) ("Section 417(e)").  Bennett and Wilde therefore have not been harmed by the Plan's actuarial assumptions, they cannot demonstrate personal injury, and they lack Article III standing under well-established Supreme Court precedent.  All of their claims warrant dismissal.

*Second*, the SAC contends that the Plan's actuarial assumptions violate three ERISA statutory provisions, 29 U.S.C. §§ 1053, 1054, and 1055, because Plaintiffs are

receiving "less than the 'actuarial equivalent' of their vested accrued benefit." SAC ¶ 2. The "accrued benefit" or "normal retirement benefit" payable at "normal retirement age"—defined terms under ERISA and the Plan —is the starting point for determining whether the Plan's actuarial assumptions provide actuarial equivalent benefits, as required by those statutes. Yet the SAC lacks any facts regarding Statton's accrued benefit (or normal retirement benefit at normal retirement age), as required to state a claim under any of the specific statutory provisions on which his claims are based.

**Third**, Plaintiffs' breach of fiduciary duty claim should be dismissed. Plaintiffs allege that the Plan Administrator breached its fiduciary duties by "[f]ollowing Plan terms" and applying the Plan's actuarial assumptions that allegedly violate ERISA. But this is not fiduciary conduct and cannot support a claim for a breach of fiduciary duty as a matter of law. Further, none of the Plaintiffs has a timely fiduciary breach claim. The application of the Plan's actuarial assumptions to calculate each Plaintiff's benefits triggered ERISA's six-year statute of repose, which extinguished each Plaintiff's claims before they asserted them. The relation back doctrine does not apply when new plaintiffs are added to a complaint to assert claims that are subject to a *statute of repose*.

For these reasons and as discussed more fully below, the Court should dismiss the SAC with prejudice.

## II.    BACKGROUND

### A.    The Terms Of The Ecolab Pension Plan

The Plan is a defined benefit pension plan. SAC ¶ 37. Under the Plan, the normal retirement benefit is a single life annuity ("SLA") payable at age 65. *Id.* ¶ 106; Ex. C §

4.2(A) ("A Participant who is employed . . . on his or her Normal Retirement Date will have a nonforfeitable right to a normal retirement benefit in the form of a monthly pension for his or her life[.]") & Art. 2 at p. 11 (defining "Normal Retirement Date" as the date on which the participant has "attained age sixty-five"); Ex. D §§ 4.2(A), 2.31 (same).[1]  An SLA is a monthly benefit amount paid to a participant until he or she dies. SAC ¶ 3.  The age-65 SLA is the accrued benefit under the Plan ("accrued benefit").  *See* 29 U.S.C. § 1002(23) (defining "accrued benefit" as the "annual benefit commencing at normal retirement age").

### 1.    Early Retirement Under The Plan

Although the Plan's "normal retirement age" is 65, SAC ¶ 106, the Plan permits certain participants to choose to commence their benefits as early as age 55.  Ex. C § 4.5(D) ("A Participant . . . whose employment terminates prior to attaining age sixty-two . . . may, upon terminating employment and attaining age fifty-five, elect to have such benefit commence as of the first day of any month earlier than his or her Normal Retirement Date . . . ."); Ex. D § 4.5(D) (same).  When a participant elects to take his benefits early, that participant is eligible to receive an early retirement subsidy.  *See* Ex. C § 4.5(D); Ex. D § 4.5(D).  Specifically, the early retiree will have his benefit reduced by 1/280th per month for each month between the age at which he begins to receive his

---

[1] As the Eighth Circuit recognizes, "documents necessarily embraced by the complaint are not matters outside the pleading[s]." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).  The Plan is integral to Plaintiffs' allegations and the Court may properly consider it.  *See* SAC ¶ 33 ("This written instrument (the 'Plan Document') is at issue in this case.").

benefit and age 62 (the "Early Retirement Reduction"). Ex. C § 4.5(D) (providing that the accrued benefit "will be reduced by one-two hundred eightieth for each month by which the date of commencement of benefit payments antedates the Participant's sixty-second birthday."); Ex. D § 4.5(D) (same).

Under this formula, for example, a participant who begins to receive his monthly benefit at age 55 will have his accrued benefit reduced by 30% (7 years (age 62 - age 55) x 12 months per year x $1/280^{th}$ per month = 0.30%). That means a participant who retires early and begins receiving benefits at age 55 will receive 70% of the monthly amount that the participant earned as an age-65 accrued benefit.

## 2.    Joint And Survivor Annuities Under The Plan

In addition to a SLA, the Plan offers other forms of benefits ("Optional Benefits"), including joint-and-survivor annuities ("JSA"), which a participant may select if he so chooses. SAC ¶ 59; Ex. C § 7.2(A); Ex. D § 7.2(A). Unlike an SLA, which provides a lifetime benefit for only the participant, a JSA provides lifetime benefits for two people. SAC ¶ 2. For example, a participant can elect the "joint and fifty percent survivor benefit (an actuarially reduced monthly pension for the Participant's life with fifty percent of such reduced benefit continuing monthly after the Participant's death for the life of the Participant's Spouse)." Ex. C § 7.1; Ex. D § 7.1; SAC ¶ 58. In other words, this form of benefit would provide the spouse 50% of the participant's benefit after the participant dies for the rest of the spouse's life. SAC ¶ 58. The Plan provides other kinds of JSAs, including a 100% JSA. Ex. C § 7.2(A); Ex. D § 7.2(A).

The amount of a JSA is determined by applying the Plan's actuarial assumptions to convert the participant's SLA to the JSA.  Ex. C Art. 2 p. 2, Schedule B § B; Ex. D § 2.2; *see also* SAC ¶ 5 ("To calculate a married participant's (and their spouse's) joint and survivor annuity, the Plan starts with the participant's single-life annuity, then uses actuarial assumptions to convert it to a joint and survivor annuity.").  This conversion accounts for the fact that there are two people receiving benefits instead of one, and that the JSA provides benefits for the length of two individuals' lives.  *See* SAC ¶ 4 ("If a participant's spouse survives them, their spouse will continue to receive a benefit for the remainder of their life.").  As a result, the JSA's monthly benefit payment is lower than the participant's SLA monthly benefit payment.  *Id.*

The Plan's actuarial assumptions for converting an SLA to a JSA are set forth in Schedule B:

> Actuarial Assumptions for Joint and Survivor Annuities.  Actuarial equivalence for the joint and fifty percent survivor annuity, the joint and seventy-five percent survivor annuity and the joint and one hundred percent survivor annuity under the Plan shall be determined by applying the following factors…. [setting forth different formulae for the various JSAs and various participant and beneficiary ages].

Ex. C, Schedule B § B; Ex. D, Schedule B § B.

**B.    Plaintiffs' Benefits**

**1.    Plaintiff Bennett Commenced Benefits Early At Age 55**

Bennett elected to receive his benefits beginning on December 1, 2014.  Ex. A at

p. 2.[2]  At the time, Bennett was age 55 and his wife was 61 years old.  *Id.* at pp. 2–3.  Had

Bennett elected to receive his benefit at the age of 65, his SLA would have been

$2,068.70 per month, with payments to begin in December 2024.  SAC ¶ 27; Ex. A at p.

2 (reflecting the "Monthly benefit beginning 12/01/2024 (Life Only form)").  That means

his "accrued benefit" and "normal retirement benefit" were $2,068.70 per month.

Because Bennett chose to receive his benefits early, at age 55, he was subject to an

Early Retirement Reduction of 30%.  *See* Ex. C § 4.5(D).  This is reflected in Bennett's

benefit election form, which shows a $2,068.70 x 0.7000 "early retirement factor" that

reduced his accrued benefit by 30%, resulting in an age-55 SLA benefit of $1,448.09 per

month.  Ex. A at p. 2 (stating the "Monthly Benefit beginning 12/01/2014 (Life Only

form)" was $1,448.09).

Bennett chose to receive his early retirement benefit in the form of a 100% JSA

(Optional Benefit) and designated his wife as beneficiary.  SAC ¶ 27 (alleging Bennett

"elected the 100% joint and survivor annuity"); Ex. A at pp. 2–3.  The Plan's 100% JSA

conversion formula is: "Joint and one hundred percent survivor annuity factor = Lesser

---

[2] The SAC does not allege the date on which any of the Plaintiffs began receiving their benefits or how old they were at the time.  *See generally* SAC.  Although the SAC ignores these critical data points, Plaintiffs' benefit election forms fill in the details.  The Court may properly consider Plaintiffs' benefit election forms and accompanying explanation of benefits because their choice of benefit and benefit commencements are integral to their claims.  *See Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013); *see also Korman v. Consol. Edison Co. of N.Y., Inc.*, 915 F. Supp. 2d 359, 363 (E.D.N.Y. 2013) (considering "the Explanation of Benefit form from United, the summary plan description ("SPD") for the Employee Plan, and the SPD for the Retiree Plan" when deciding motion to dismiss).  Moreover, these documents may be considered as part of the factual challenge to Bennett's and Wilde's Article III standing.

of: [Factor from Table in (d)] plus [0.006 times (Spouse or Domestic Partner Age minus Participant Age)] and 0.99." Ex. C at Schedule B § B(1)(c). Because Bennett elected to receive his benefits at age 55 and chose a 100% JSA, the Table (d) factor applicable to him was 0.878. *Id.* § B(1)(d) (highlighted). When Bennett commenced benefits, his wife was 61 years old (six years older than Bennett). Ex. A at p. 3.

Pursuant to the actuarial assumptions in Schedule B of the Plan, the conversion from Bennett's SLA to the 100% JSA was calculated as follows:

0.878 [Table (d) factor] + [0.006 x 6-year age difference], which is

0.878 + .036, which equals 0.914.

This is reflected on Bennett's benefit election form showing a 0.9140 factor to calculate his 100% JSA. Ex. A at p. 2. Applying this 0.914 factor to Bennett's age-55 SLA of $1,448.09 results in a 100% JSA benefit of $1,323.55 per month (0.914 x 1,448.09). *Id.* (providing that the "Joint & 100% Survivor Beneficiary Benefit" is $1,323.55 after application of the "Joint & 100% Survivor" factor of 0.9140).

### 2.    Plaintiff Wilde Commenced Benefits Early At Age 59

Wilde began receiving benefits on May 1, 2018, when he was 59 and his wife was 57 years old. Ex. B at p. 2. Wilde's benefit election form shows that his age-65 SLA was $6,802.89 per month, with payments scheduled to begin in April 2024. Ex. B at p. 1 (reflecting the "Monthly benefit beginning 04/01/2024 (Life Only form)"). That means his "accrued benefit" and "normal retirement benefit" were $6,802.89 per month.

Because Wilde chose to commence his benefits early, in 2018 at age 59, he too was subject to an Early Retirement Reduction, in the amount of 12.5%. *See* Ex. D §

7

4.5(D).  This is reflected in Wilde's benefit election form, which shows:  $6,802.89 x

0.875 "early retirement factor" that reduced his accrued benefit by 12.5%, resulting in an

age-59 SLA benefit of $5,952.53 per month.  Ex. B at p. 1 (stating the "Monthly Benefit

beginning 05/01/2018 (Life Only form)" was $5,952.53).

Wilde also chose to receive the 100% JSA optional benefit form, designating his

wife as his beneficiary.  SAC ¶ 28 (alleging Wilde "elected the 100% joint and survivor

annuity"); Ex. B at pp. 2–3.  Because Wilde elected a 100% JSA and chose to receive his

benefits at age 59 and one month, the Table (d) factors applicable to him were 0.854 and

0.848.  Ex. C, Schedule B § B(1)(d) (highlighted).  Wilde's wife was aged 57 years and

nine months when he commenced benefits.  Ex. B at p. 2.  Applying the Plan's actuarial

assumptions, the conversion factor from Wilde's SLA to the 100% JSA was calculated as

follows:

0.8535 [Table (d) factor interpolated between ages 59 and 60] + [0.006 x -1

year and 4 months age difference], which is 0.8535 - 0.008, which equals

0.8455.

This is reflected on Wilde's benefit election form, showing a 0.8455 factor for calculating

his 100% JSA.  Ex. B at p. 1.  Applying this 0.8455 factor to Wilde's age-59 SLA of

$5,952.53 results in a 100% JSA benefit of $5,032.86 per month (0.8455 x 5,952.53).  *Id.*

(providing that the "Joint & 100% Survivor Beneficiary Benefit" is $5,032.86 after "Joint

& 100% Survivor Annuity" factor of 0.8455 was applied).

### 3.    Plaintiff Statton Commenced Benefits At Age 66

Statton did not retire at age 65, the Plan's normal retirement date.  Rather, he kept

working, commencing pension benefits at age 66 and 1 month. *See* Ex. E; SAC ¶ 29. Like the other two Plaintiffs, Statton also elected a JSA. *See* Ex. E; SAC ¶ 29.

### C.    Plaintiffs' Claims And The Relevant Statutory Provisions

Plaintiffs do not claim that Defendants miscalculated their benefits or failed to follow the terms of the Plan. Rather, they allege that, by following the Plan's terms and applying its actuarial assumptions to calculate their benefits, Defendants violated ERISA and the Plan Administrator breached its fiduciary duties under ERISA. Plaintiffs believe that ERISA requires the Plan to use different actuarial assumptions than those expressly provided in the Plan—specifically those in Section 417(e)—which would purportedly afford them greater benefits.

Counts I, II and III allege that the Plan's actuarial assumptions violate 29 U.S.C. §§ 1053(a), 1054(c)(3) and 1055. SAC ¶¶ 99, 110, 113, 116–17. Section 1053 provides that an employee's "accrued benefit" is nonforfeitable under certain circumstances. 29 U.S.C. § 1053(a). In claims brought under Section 1053(a), the question is "whether the benefits given to Plaintiffs are the actuarial equivalent of the benefits they would have received *at normal retirement age*." *Smith v. U.S. Bancorp*, No. 18-3405, 2019 WL 2644204, at *4 (D. Minn. June 27, 2019) (emphasis added).

Section 1054(c)(3) similarly addresses the "accrued benefit," providing that "if an employee's *accrued benefit* is to be determined as an amount *other than an annual benefit commencing at normal retirement age*[,]" e.g., a joint and survivor annuity beginning upon early retirement, like here, "the employee's *accrued benefit* . . . shall be the actuarial equivalent of such benefit." 29 U.S.C. § 1054(c)(3) (emphases added); *see*

9

*also* SAC ¶ 43 (citing Section 1054).  This means that "any distribution from the Plan at issue here must be an actuarial equivalent *of the accrued benefit at normal retirement age*."  *Smith*, 2019 WL 2644204, at *2 (emphasis added); *see also Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 170 (D. Mass. 2022) (same).

Section 1055(a) likewise addresses the "accrued benefit," stating that "in the case of a vested participant who does not die before the annuity starting date, the *accrued benefit* payable to such participant shall be provided in the form of a qualified joint and survivor annuity."  29 U.S.C. § 1055(a)(1) (emphasis added).

The term "accrued benefit" discussed in these three statutory provisions is an explicitly defined term in ERISA meaning the benefit "expressed in the form of an annual benefit commencing *at normal retirement age*."  29 U.S.C. § 1002(23) (emphasis added); *see, e.g.*, *Atkins v. Nw. Airlines, Inc.*, 967 F.2d 1197, 1201 (8th Cir. 1992) ("An *accrued benefit* is not the amount of pension payment a recipient receives by retiring early, it is the amount of pension payment a recipient achieves at normal retirement age.") (emphasis added); *Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617, 623 (8th Cir. 2017), *aff'd sub nom. Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020) ("'Accrued benefit' for purposes of a defined benefit plan means 'the individual's accrued benefit determined under the plan . . . expressed in the form of an *annual benefit commencing at normal retirement age*.'") (emphasis added); *Smith*, 2019 WL 2644204, at *2 (explaining that under 29 U.S.C. § 1054(c)(3), "any distribution from the [plan] must be an actuarial equivalent of the accrued benefit at normal retirement age"); *Cattin v. Gen'l Motors Corp.*, 955 F.2d 416, 423 (6th Cir. 1992) (making clear that "for a benefit to be accrued,

10

it must be expressed in the form of an annual benefit commencing at normal retirement age[,]" and holding that "[b]ecause early retirement benefits . . . do not commence at normal retirement age, they are not 'accrued benefits'"); *Tilley v. Mead Corp.*, 927 F.2d 756, 759 (4th Cir. 1991) ("[E]arly retirement benefits should not be considered 'accrued benefits' within the meaning of ERISA."); *Engers v. AT&T*, 2022 WL 32159586, at *8 (D.N.J. Oct. 17, 2022) ("Other courts, and even ERISA itself, have noted that an accrued benefit is not the amount of pension payment a recipient receives by retiring early, it is the amount of pension payment a recipient achieves at normal retirement age.") (quotation and citation omitted).

## III.   ARGUMENT

### A.   Plaintiffs Bennett And Wilde Lack Article III Standing

#### 1.   Legal Standard

"Each plaintiff must establish standing for each form of relief sought." *Miller v. Thurston*, 967 F.3d 727, 734 (8th Cir. 2020); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352–53 (2006) (constitutional standing is not "commutative" or "dispensed in gross") (citation omitted). Indeed, "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring). To establish Article III standing, a plaintiff must demonstrate "that he or she suffered an injury-in-fact that is concrete, particularized, and actual or imminent." *Thole*, 590 U.S. at 540 (affirming dismissal for lack of Article III standing). To be "concrete," an injury "must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). And "to be 'particularized,'

11

[the injury] 'must affect the plaintiff in a personal and individual way.'" *Id.* at 339.

"[E]ven named plaintiffs who represent a class must allege and show that they personally

have been injured, not that injury has been suffered by other, unidentified members of the

class to which they belong." *Id.* at 339 n.6 (citations omitted).

Because standing implicates subject matter jurisdiction, it is properly challenged

under Rule 12(b)(1). *See ARRM v. Piper*, 367 F. Supp. 3d 944, 950 (D. Minn. 2019). In

a factual attack under Rule 12(b)(1), as here, a court goes beyond the pleadings and

considers extrinsic evidence including "testimony and affidavits." *Branson Label, Inc. v.*

*City of Branson*, 793 F.3d 910, 915 (8th Cir. 2015). Plaintiffs, as the nonmoving party,

do "not enjoy the benefit of the allegations in [their] pleadings being accepted as true by

the reviewing court." *Id.* In response to a factual attack, Plaintiffs bear the burden of

proving the elements of Article III standing. *Graffiti Ent., Inc. v. Speed Com. Inc.*, 2014

WL 5795477, at *3 (D. Minn. Nov. 6, 2014). Claims over which a court lacks subject-

matter jurisdiction must be dismissed. *City of Clarkson Valley v. Mineta*, 495 F.3d 567,

569 (8th Cir. 2007).

### 2.    Plaintiffs Bennett And Wilde Have Not Suffered An Injury-In-Fact Because Their Benefits Under The Plan Are Greater Than They Would Be Using The Section 417(e) Assumptions

Bennett and Wilde claim they have "suffered harm" due to the Plan's actuarial

assumptions because, had their benefits "been determined using reasonable actuarial

assumptions (such as those set forth in 26 U.S.C. § 417(e)), [their] monthly pension

payment[s] would be larger." SAC ¶¶ 27–28. But their current benefits—determined

using the Plan's actuarial assumptions—are *greater* than their benefits would be using the

12

Section 417(e) assumptions to convert their "accrued benefit" amounts to an early retirement 100% JSA. As such, neither Bennett nor Wilde has suffered an Article III injury-in-fact, and they lack constitutional standing to bring their claims.

This lack of harm is demonstrated by calculating their benefits using the Section 417(e) assumptions. Because both Bennett and Wilde elected to receive their benefits before the Plan's normal retirement age (age 65) and as a 100% JSA, determining their benefits requires two calculations: (1) an early commencement reduction to convert their age-65 accrued benefit into an SLA at their age of commencement; and (2) converting that early retirement SLA to the 100% JSA optional form of benefit that they each selected. *See* Declaration of Lawrence J. Sher ("Sher Decl.") ¶¶ 17, 27; 29 U.S.C. § 1054(c)(3).[3]

Bennett commenced benefits early at age 55. To calculate the actuarial equivalent of his accrued benefit under Section 417(e), the first step is to reduce Bennett's age-65 accrued benefit to an age-55 early commencement benefit, and the second step is to convert his age-55 SLA to a 100% JSA, the Optional Benefit form he elected. Sher Decl. ¶¶ 17–18. Going through both steps yields a monthly benefit amount of $932.21:

- **Step 1** – **Early Commencement Reduction**: $2,068.70 (age-65 SLA) x 0.4818 (early retirement factor) equals $996.70.

---

[3] This approach mirrors the two-step calculation set forth in the Plan, where the accrued benefits of Bennett and Wilde were reduced by an early retirement factor and then the early retirement SLA was converted to a 100% JSA. *See supra* Section II(B). The only difference is the actuarial assumptions applied to determine the early retirement reduction factor and the SLA to JSA conversion factor are those based on the Section 417(e) actuarial assumptions Plaintiffs prefer instead of the Plan's actuarial assumptions.

13

- **Step 2** – **100% JSA Conversion**: $996.70 (age-55 early

  commencement benefit) x 0.9353 (100% JSA factor) equals

  $932.21.

*Id*. ¶ 18. Meanwhile, Bennett's current monthly benefit is $1,323.55. *See supra* Section II(B)(1). Put simply, applying the Section 417(e) assumptions to Bennett's accrued benefit would result in a benefit payment of $391.34 *less* per month than the amount Bennett currently receives under the Plan. Sher Decl. ¶ 19. Thus, Bennett has not been harmed by the Plan's failure to use the Section 417(e) assumptions.

Wilde also has not been injured by the Plan's actuarial assumptions. He commenced benefits early at age 59. To calculate the actuarial equivalent of his accrued benefit under the Section 417(e) assumptions, the first step is to reduce his age-65 accrued benefit to an age-59 early commencement benefit, and the second step is to convert his age-59 SLA to a 100% JSA. Sher Decl. ¶ 27. Applying the Section 417(e) assumptions yields a monthly benefit of $3,953.07. *Id*. ¶¶ 28–29. Yet Wilde's current monthly benefit amount under the Plan's terms is $5,032.86. *See supra* Section II(B)(2). That means if the Section 417(e) assumptions were used to calculate Wilde's benefit, his benefit payment would be $1,079.79 *less* per month than what he currently receives under the Plan. Sher Decl. ¶ 29. Notably, Plaintiffs have yet to dispute Mr. Sher's calculations, and their expert did not offer any alternative calculations based on Bennett or Wilde's accrued benefit. *See generally* Dkt. 52; Dkt. 100-2 at 82:17–83:16, 126:20–127:3.

"No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). And "[t]here is no ERISA exception to Article III." *Thole*, 590 U.S. at 547. That principle applies to Bennett and Wilde here, as it did in *Thorne v. U.S. Bancorp*, 2021 WL 1977126 (D. Minn. May 18, 2021), where the plaintiffs also argued that a pension plan used "unreasonable" actuarial assumptions to calculate their benefits, advocating for the Section 417(e) assumptions instead. But the court found that applying the Section 417(e) assumptions would yield a lower actuarial equivalent of the accrued benefit for some participants who were receiving greater monthly payments under the plan's terms. *Id*. at *2. Consequently, those participants "were not injured by the Plan" and therefore lacked constitutional standing to challenge the plan's actuarial assumptions. *Id*. (denying class certification because these "potential class members lack Article III standing").

Because Bennett and Wilde have not been harmed by the Plan's actuarial assumptions, and both would be *worse off* if the Plan used the Section 417(e) assumptions to calculate their benefits, neither has an injury-in-fact. *See Spokeo*, 578 U.S. at 339–40. The Court should dismiss all claims asserted by Bennett and Wilde.

### 3. The Accrued Benefit, Not The Early Retirement Benefit, Is The Starting Point For Calculating Actuarial Equivalence

Bennett and Wilde argued previously that their accrued benefit is not the starting point for these actuarial equivalence calculations and suggest using their early retirement benefits instead. That untenable position runs counter to the ERISA statutes on which Plaintiffs rely, case law, and their own expert testimony.

15

To start, all three statutory provisions address the accrued benefit, which is the normal retirement benefit at normal retirement age. *See, e.g.*, 29 U.S.C. § 1054(c)(3) (providing that if a participant takes his benefit at a time other than normal retirement age or in any other form, then that benefit must be the actuarial equivalent of his "accrued benefit"); *id.* § 1055(a)(1) ("the *accrued benefit* payable to such participant shall be provided in the form of a qualified joint and survivor annuity") (emphasis added); *id.* § 1053(a)(1) (referring to the "normal retirement benefit" at "normal retirement age"); *Smith*, 2019 WL 2644204, at *2; *Belknap*, 588 F. Supp. 3d at 170. Indeed, the "accrued benefit" is the cornerstone of all three statutory provisions and Plaintiffs' claims, which allege they are receiving "less than the 'actuarial equivalent' of their vested *accrued benefit*" in violation of 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055. SAC ¶¶ 2, 95, 106, 115.

The "accrued benefit" is, by ERISA's definition, the SLA at *normal retirement age*. 29 U.S.C. § 1002(23). Under the Plan, the accrued benefit is the age-65 SLA, as Plaintiffs' own expert concedes:

> A. Well, this plan and every plan defines an accrued benefit payable at normal retirement date or virtually every plan. The accrued benefit is the amount payable as the normal form at the normal retirement date.
>
> Q. And so for the Ecolab pension plan, the accrued benefit is the age 65 for [*sic*] single life annuity?
>
> A. Yes, assuming there was at least five years of service.

Dkt. 100-2 at 29:17–25; *see also id.* 28:22–29:5; Dkt. 76 ¶ 10 (Altman declaration referring to Plaintiffs' "accrued benefits"); SAC ¶ 27.

16

Critically, Bennett and Wilde's early retirement benefit is not their "accrued benefit." *See Atkins*, 967 F.2d at 1201 ("An accrued benefit *is not the amount of pension payment a recipient receives by retiring early*, it is the amount of pension payment a recipient achieves at normal retirement age.") (emphasis added); *Smith*, 2019 WL 2644204, at *2 ("[R]egardless of any option as to timing or form of distribution," a participant's elected benefit "must be [the] actuarial equivalent of the accrued benefit at normal retirement age."); *see also supra* p. 10 (collecting cases).[4] Any suggestion that the actuarial equivalent calculations should be based on Bennett and Wilde's *early* retirement benefits disregards the statutory language and is a non-starter.

### 4. Bennett And Wilde Cannot Obtain Constitutional Standing As Representatives Of The Plan Or Through Statton

Bennett and Wilde cannot cure their personal standing deficiencies by arguing that they bring claims as representatives of the Plan pursuant to ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2). *See* SAC ¶¶ 1, 102–104, 111–13, 120–22; *id.* Prayer for Relief ¶ L (seeking various "relief to the Plan" including "restoration of losses to the Plan"). Supreme Court precedent holds that Plaintiffs must demonstrate personal injury even when purporting to sue on behalf of a defined benefit plan like the Plan.

The Supreme Court addressed a similar situation in *Thole*, holding that plaintiff participants in a defined benefit plan lacked Article III standing to pursue claims under 29

---

[4] The same principle applies to Statton, a late retiree. *See Atkins*, 967 F.2d at 1202 (when considering the benefit a late retiree with suspended benefits receives, courts evaluate the benefit at normal retirement age); *Johnson v. Franco*, 727 F.2d 442, 445 (5th Cir. 1984) (noting that for suspension purposes, courts are concerned with only the benefit at normal retirement age).

U.S.C. § 1132(a)(2).  The *Thole* plaintiffs alleged that the defendants mismanaged the

U.S. Bank pension plan to the tune of hundreds of millions of dollars.  590 U.S. at 541.

Although none of the named plaintiffs could show they were personally injured, they

nevertheless argued they had constitutional standing because "injuries to the plan are by

definition injuries to the plan participants" even if the plaintiffs "have not suffered (and

will not suffer) any monetary losses."  *Id.* at 540.

The Supreme Court rejected that argument, holding that even a plaintiff suing on

behalf of a defined benefit plan must demonstrate personal injury-in-fact.  *Id.* at 543

("[I]n order to claim the interests of others, the litigants themselves still must have

suffered an injury in fact[.]") (quotation and citation omitted).  That is because, in a

defined-benefit plan, the "benefits paid to the participants . . . are not tied to the value of

the plan."  *Id.*  Thus, any alleged injury to the plan—and the relief that the plaintiffs

sought for the plan—has no impact on the plaintiffs' personal benefits.  *Id.* at 543–44.

The Supreme Court reaffirmed that "[t]here is no ERISA exception to Article III."  *Id.* at

547.

Nor can Statton confer Article III standing to Bennett and Wilde.  Rather, each

named Plaintiff must establish standing as to every claim asserted.  *Miller*, 967 F.3d at

734; *Allen v. Wright*, 468 U.S. 737, 752 (1984) (noting "the standing inquiry requires

careful judicial examination of a complainant's allegations to ascertain whether *the

particular plaintiff* is entitled to an adjudication of the particular claims asserted")

(emphasis added).  "Only those plaintiffs who have been concretely harmed by a

defendant's statutory violation may sue that private defendant over that violation in

18

federal court." *Ramirez*, 594 U.S. at 431 (observing that "standing is not dispensed in gross"). Although Bennett and Wilde purport to represent a class with Statton, that does not do the trick either because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *See Tyson Foods*, 577 U.S. at 466.

Bennett and Wilde lack Article III standing to press their claims, which must be dismissed.

## B.    Rule 12(b)(6) Mandates Dismissal Of Plaintiffs' Remaining Claims

### 1.    Rule 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), the SAC must state a claim that is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id*. at 555, or show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

When adjudicating Rule 12(b)(6) motions, "courts are not strictly limited to the four corners of complaints" but "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[.]" *Dittmer*, 708 F.3d at 1021 (citations omitted); *see also Gorog v. Best Buy Co*., 760 F.3d 787, 791 (8th Cir. 2014) (in deciding a motion to dismiss, a court may consider "documents necessarily embraced by the complaint" including the contract upon which a claim rests) (citations omitted); *Ashanti v. City of*

19

*Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading.").  Because this is an ERISA case, the Court may consider the Plan documents and the benefit election forms showing the calculations of Plaintiffs' benefits.  *Dittmer*, 708 F.3d at 1021; *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1045 (D. Minn. 2009); *Korman*, 915 F. Supp. 2d at 363.[5]

### 2.    The SAC Does Not Allege Any Facts About Statton's Accrued Benefit Warranting Dismissal Of His Statutory Violation Claims

In Counts I–III, Statton claims that the Plan's actuarial assumptions violate 29 U.S.C. §§ 1053, 1054, or 1055 because they result in "less than the 'actuarial equivalent'

---

[5] Contrary to the SAC's contentions, nothing in ERISA's statutory language or legislative history provides a basis for imposing a requirement that actuarial assumptions be "reasonable."  *See Covic v. FedEx Corp.*, 774 F. Supp. 3d 954, 958 (W.D. Tenn. 2024) ("If Congress intended to include a reasonableness requirement for § 1055(d), it could have—but it did not."), *appeal filed*, No. 24-5945 (6th Cir. 2024); *Belknap*, 588 F. Supp. 3d at 177 ("§ 1054(c)(3) does not impose a requirement that an 'actuarially equivalent' benefit must be based on 'reasonable' actuarial assumptions"); Opinion & Order Granting Motion to Dismiss, *Reichert v. Bakery, Confectionary, Tobacco Workers & Grain Millers Pension Comm.*, No. 2:23-cv-12343, Dkt. 36 (E.D. Mich. April 17, 2024) (dismissing similar claims and finding that "§ 1055 does not impute a 'reasonableness' requirement on the actuarial equivalence computation"), *appeal filed*, No. 24-1442 (6th Cir. 2024); *Drummond v. S. Co. Servs., Inc.*, 2024 WL 4005945, at *5 (N.D. Ga. July 30, 2024) ("none of the provisions at issue here provide that plans must determine actuarial equivalence using assumptions that are reasonable or using specified interest rates and mortality tables"), *appeal filed*, No. 24-12773 (11th Cir. 2024).  Indeed, Congress specifically required plans to use "reasonable" actuarial assumptions in other parts of the statute, but not in these provisions.  *See* 29 U.S.C. §§ 1083(h), 1393(a).  Nonetheless, Judge Magnuson declined to dismiss similar claims for this reason in *Smith*, 2019 WL 2644204, at *3.  Although Defendants disagree with this aspect of the *Smith* decision, they do not raise it as a ground for dismissal here.

of [his] vested *accrued benefit*." SAC ¶ 2 (emphasis added). The accrued benefit, then,

is the starting point for determining whether the Plan's actuarial assumptions provide

actuarial equivalent benefits, as 29 U.S.C. §§ 1053, 1054, and 1055 require. *See supra*

Section III.[6] As the court explained in *Smith*, "any distribution from the Plan at issue

here must be an actuarial equivalent of the *accrued benefit at normal retirement age*."

2019 WL 2644204, at *2 (emphasis added); *see also Belknap*, 588 F. Supp. 3d at 168

("ERISA requires that an employee's accrued benefit be the 'actuarial equivalent' of the

retirement benefit the participant would have received if they waited until normal

retirement age to begin receiving benefits."). Even the Section 417(e) actuarial

assumptions Statton prefers, which govern lump-sum payments, are anchored on the

accrued benefit. *See Sunder v. U.S. Bancorp Pension Plan*, 586 F.3d 593, 597 (8th Cir.

2009) ("ERISA requires that the lump-sum payment must be the actuarial equivalent of

the normal accrued pension benefit.") (citing Section 417(e), other citations and

quotations omitted); *Esden v. Bank of Boston*, 229 F.3d 154, 164 (2d Cir. 2000) ("[A]ny

distribution from the plan must be the actuarial equivalent of the accrued benefit

expressed *as an annual benefit payable at normal retirement age*, that is—otherwise

---

[6] A forfeiture under Section 1053(a) occurs where a participant is paid "less than the
actuarial equivalent value of [his] *accrued benefit*." SAC ¶ 9 (emphasis added); *see also*
29 U.S.C. § 1053(a). Section 1054(c)(3) likewise states "if an employee's *accrued
benefit* is to be determined as an amount other than an annual benefit commencing at
normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial
equivalent of such benefit." 29 U.S.C. 1054(c)(3) (emphasis added). And Section
1055(a) provides that "in the case of a vested participant who does not die before the
annuity starting date, the *accrued benefit* payable to such participant shall be provided in
the form of a qualified joint and survivor annuity." 29 U.S.C. § 1055(a)(1) (emphasis
added).

expressed—the normal retirement benefit. . . . The cross-referenced Code section 417(e) requires that the accrued benefit be discounted back to present value at the 'applicable interest rate.'"); *see also* SAC ¶ 48 (alleging that "the Treasury regulations concerning JSAs require that a 'qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity'").

Although Statton's accrued benefit is the linchpin of his statutory violation claims, conspicuously the SAC does not allege the amount of Statton's accrued benefit. *See* SAC ¶ 29.[7] Nor does it allege the monthly benefit amount that Statton currently receives under the Plan or identify the amount he would receive by applying the Section 417(e) actuarial assumptions. *See id.* Rather, the SAC contends in conclusory fashion that Statton "is receiving less every month than he would otherwise receive" had the Section 417(e) assumptions been used, which purportedly would result in a "larger" "monthly pension payment." *Id.* ¶¶ 29, 70. Such threadbare allegations do not suffice to state a plausible claim. *Iqbal*, 556 U.S. at 678.

Underscoring this glaring omission, the SAC acknowledges that the Plan's normal retirement age is 65. SAC ¶ 106; *see also* Ex. C § 4.2(A) & Art. 2 at p. 11; Ex. D §§ 4.2(A), 2.31. But instead of alleging facts about Statton's accrued benefit, the SAC concedes that he retired and began receiving benefits at age 66, after the Plan's normal retirement age. SAC ¶ 29.[8] The SAC therefore alleges no facts about Statton's "accrued

---

[7] By contrast, the SAC sets forth the amount of Bennett's accrued benefit. SAC ¶ 27.

[8] At most, then, the SAC addresses only the benefit Statton received when he commenced benefits at age 66—not the accrued benefit to which he was entitled at normal retirement age under the Plan and that is subject to §§ 1053, 1054, and 1055.

benefit" that implicates any of the requirements in 29 U.S.C. §§ 1053, 1054, or 1055.

Nor does the SAC allege any facts that establish a violation of these provisions.  Statton's

claims should be dismissed pursuant to Rule 12(b)(6).

### 3.    Count IV, The Breach Of Fiduciary Duty Claim, Must Be Dismissed Because It Does Not Challenge Fiduciary Conduct

In Count IV, Plaintiffs allege that the Plan Administrator breached its fiduciary

duties under ERISA when applying the Plan's actuarial assumptions and in failing to

ensure that those actuarial assumptions conformed to ERISA's requirements.  SAC ¶¶ 75,

128.  This claim fails as a matter of law because it does not challenge fiduciary conduct.

In "every case charging breach of ERISA fiduciary duty," the "threshold

question" is whether the person "was performing a fiduciary function" when engaging in

the challenged conduct.  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Here, the

challenged conduct is maintaining the Plan's actuarial assumptions and applying those

assumptions to calculate Plan participants' benefits.  But the oversight and control of plan

terms is not fiduciary in nature but rather constitutes settlor conduct.  *See Hughes Aircraft

Co. v. Jacobson*, 525 U.S. 432, 443 (1999); *Schultz v. Windstream Commc'ns, Inc.*, 600

F.3d 948, 951 (8th Cir. 2010) ("[W]hen employers adopt, modify, or terminate plans that

provide pension benefits, 'they do not act as fiduciaries, but are analogous to the settlors

of a trust.'") (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)).  Nor does the

Plan Administrator act as a fiduciary when it calculates benefits pursuant to the Plan's

conversion factors.  *See, e.g.*, *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1080 (4th

Cir. 1989) ("To adhere to the plan is not a breach of fiduciary duty."); *Gagliano v.*

*Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008) ("ERISA requires the Plan be administered as written and to do otherwise violates not only the terms of the Plan but causes the Plan to be in violation of ERISA."). There is no fiduciary duty to disregard allegedly unlawful plan terms. *See Sec'y of Lab. v. Macy's, Inc.*, 2022 WL 407238, at *9 (S.D. Ohio Feb. 10, 2022).

Plaintiffs' own authority confirms that following plan terms does not involve the exercise of discretionary authority or control required to act as an ERISA fiduciary. *See* Dkt. 112 (citing *Scott v. AT&T Inc.*, 2025 WL 1903673 (N.D. Cal. July 9, 2025)). In *Scott*, the court rejected the argument that AT&T breached its fiduciary duty when it "failed to ensure" that its pension plan conversion factors "complied with ERISA." *Id.* at *8. The *Scott* court rejected the argument that following "allegedly unlawful plan terms to calculate JSA benefits pursuant to the challenged conversion factors are fiduciary acts." *Id.*

Because the Plan Administrator did not act as a fiduciary when adhering to the Plan's terms and applying the Plan's actuarial assumptions, Count IV fails as a matter of law and must be dismissed.

### 4.    Count IV Is Time-Barred By ERISA's Statute Of Repose

Count IV is subject to dismissal for another independent reason—it is time-barred. Fiduciary breach claims are subject to ERISA's six-year statute of repose, which provides that "[n]o action may be commenced under this subchapter with respect to a fiduciary's breach . . . after the earlier of . . . six years after [] the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1)(A); *Intel Corp. Inv.*

24

*Pol'y Comm. v. Sulyma*, 589 U.S. 178, 180 (2020) ("We have referred to § 1113(1) as a statute of repose[.]").

The application of the statute of repose is premised on two events—when the alleged breach occurred and when the claim was filed. The SAC alleges that the calculation of Plaintiffs' JSA benefits "using the Plan's outdated and unreasonable actuarial assumptions" constitutes the alleged breach. SAC ¶ 75. Based on Plaintiffs' own allegations, then, the breach occurred when the Plan's actuarial assumptions were applied to determine each Plaintiff's JSA benefit, which happened no later than the date on which each Plaintiff commenced his benefits. *See Cal. Pub. Empls.' Ret. Sys. v. ANZ Secs., Inc*., 582 U.S. 497, 505 (2017) ("statutes of repose begin to run on the date of the last culpable act or omission of the defendant.") (quotation omitted).

Bennett commenced benefits on December 1, 2014, when his 100% JSA was calculated according to the Plan's actuarial assumptions. *See* Ex. A at p. 2; *see also* SAC ¶ 27 (alleging that "[u]pon retirement, Mr. Bennett elected the 100% joint and survivor annuity offered by the Plan and began receiving his monthly benefit. This benefit was calculated based on outdated assumptions about participants' and beneficiaries' longevity."). The alleged fiduciary breach occurred by December 1, 2014, which in turn triggered ERISA's six-year statute of repose. *See ANZ Sec., Inc*., 582 U.S. at 505. Yet Bennett did not file his claim until February 2, 2024, more than nine years later. *See* Dkt. 1. Bennett's fiduciary breach claim is therefore "extinguished" and must be dismissed. *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1224 (10th Cir. 2014). Plaintiffs have not contested that Bennett's claim is untimely, nor can

they.  *See* Dkt. 100-2 at Tr. 31:18–32:6.

Wilde's and Statton's claims are likewise time-barred.  The alleged fiduciary breach occurred with respect to Wilde by May 1, 2018, when he commenced his benefits, which were calculated using the Plan's actuarial assumptions.  Ex B at pp. 1–2; *see also* SAC ¶ 28.  Wilde's fiduciary breach claim was extinguished on May 1, 2024, but he did not assert his claim until June 14, 2024.  *See* Dkt. 32.[9]  Similarly, Statton commenced benefits on August 1, 2018, when the alleged breach occurred through the application of the Plan's actuarial assumptions to determine his JSA.  Ex. E at p. 1.  Statton's fiduciary breach claim expired on August 1, 2024, but he did not lodge his claim until July 16, 2025.  *See* Dkt. 114.

Wilde and Statton cannot bootstrap their untimely fiduciary breach claims onto Bennett's time-barred claim through the relation back doctrine, just as one untimely complaint cannot "be saved by relating back to another untimely complaint."  *Berry v. St. Louis Pub. Sch.*, 2024 WL 5660823, at *4 (E.D. Mo. Mar. 19, 2024), *aff'd*, 2025 WL 1164223 (8th Cir. Apr. 22, 2025).  Otherwise, Bennett's untimely fiduciary breach claim serves as a lifeline for Wilde's and Statton's untimely claims, which in turn breathe new life into Bennett's time-barred claim that never would have survived a motion to dismiss in the first place.  From a practical perspective, that would be an absurd result.  *See Leachman v. Beech Aircraft Corp*., 694 F.2d 1301, 1309 (D.C. Cir. 1982) (acknowledging the need to limit relation back of claims asserted by new plaintiffs

---

[9] Plaintiffs do not dispute that Wilde's fiduciary breach claim is untimely either.  *See* Dkt. 75.

because without it, claims may be asserted "long after the statute of limitations had lapsed").

Applying the statute of repose to Count IV is perfectly appropriate because it enforces Defendants' substantive right to be "free from liability after the legislatively determined period of time." *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014); *see also ANZ Sec., Inc.*, 582 U.S. at 505 ("statutes of repose are enacted to give more explicit and certain protection to defendants.").[10] Allowing relation back here—where the first-filed claim is not even timely—would thwart that purpose. The Supreme Court observed that a statute of repose is intended "to give the defendant full protection after a certain time." *ANZ Sec., Inc.*, 582 U.S. at 511; *see also Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) (a statute of repose "create[s] a substantive right in those protected to be free from liability after a legislatively-determined period of time.").

Here, none of the three Plaintiffs has a timely fiduciary breach claim. Bennett's claim is subject to dismissal. And Wilde and Statton could not have filed their own lawsuit asserting a breach of fiduciary duty claim because those too would be time-barred. Plaintiffs cannot circumvent their timeliness problem by conjuring the concept of

---

[10] While courts commonly apply the relation back doctrine in the context of a statute of limitations, a statute of repose is a different animal. *See Waldburger*, 573 U.S. at 8 (each has "a distinct purpose and each is targeted at a different actor."). "Statutes of limitations are designed to encourage plaintiffs to pursue diligent prosecution of known claims." *ANZ Sec., Inc.*, 582 U.S. at 504. Meanwhile, a statute of repose places "a permanent bar against" filing a claim after the period lapses. *China Agritech v. Michael H. Resh*, 584 U.S. 732, 746 (2018). As the Second Circuit observed, this "conceptual distinction carries significant practical consequences." *IndyMac MBS, Inc.*, 721 F.3d at 110.

relation back to another untimely claim. *See Berry*, 2024 WL 5660823, at *4 ("it simply makes no sense to hold that a complaint that was dead on arrival can breathe life into another complaint.") (quotation omitted).

Beyond that, equitable doctrines, such as the relation back doctrine, have no applicability to statutes of repose. *See ANZ Sec., Inc.*, 582 U.S. at 505 (refusing to apply tolling principles to a statute of repose); *IndyMac MBS*, 721 F.3d at 109.[11] The Rules Enabling Act provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); *see also IndyMac MBS*, 721 F.3d at 109 (concluding that the Rules Enabling Act would bar equitable tolling of statute of repose). Allowing Wilde and Statton to bring claims outside the repose period would violate the Rules Enabling Act. *See In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 23 F. Supp. 3d at 209 (new plaintiffs outside the repose period could not relate back to original complaint because "a procedural rule cannot alter a substantive right"); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 380 (S.D.N.Y. 2013) ("[W]hen a claim is barred by a statute of repose, Rule 15 may not be construed to permit relation back because such a construction would conflict with the Rules Enabling Act[.]") (cleaned up); *In re Am. Hous. Found.*, 543 B.R. 245, 258 (Bankr. N.D. Tex. 2015) ("The principle of relation back arises in rules of procedure" and "cannot save an extinguished substantive claim"). Wilde and Statton have no substantive right to bring an

---

[11] *See also In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 23 F. Supp. 3d 203, 208 (S.D.N.Y. 2014) (rejecting the application of Rule 15's "relation back" doctrine in the context of a statute of repose); *In re Lehman Bros. Secs. & ERISA Litig.*, 800 F. Supp. 2d 477, 483 (S.D.N.Y. 2011) (same).

ERISA fiduciary breach claim outside the statute of repose period by invoking the relation back doctrine. *See China Agritech*, 584 U.S. at 745.

Respectfully, Defendants submit that neither *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150 (10th Cir. 2023), nor *Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services Inc.*, 12 F.4th 337 (3d Cir. 2021) ("*SEPTA*") (cited at Dkt. 113 at 6 n.1), support applying the relation back doctrine here. The claims governed by the statute of repose in those cases were brought *before* the repose period expired, and simply added additional facts to support their claims. *See Hogan*, 73 F.4th at 1157; *SEPTA*, 12 F.4th at 347. Here, by contrast, Bennett's fiduciary breach claim was time-barred when he initiated the action, and the amended pleading does not add additional facts to support Bennett's claims. In both *Hogan* and *SEPTA*, moreover, the courts limited their holdings to circumstances where the amended pleading did *not seek to add a new plaintiff* whose claims otherwise would be time-barred. *Hogan*, 73 F.4th at 1157 ("But that is not the situation here, where the SAC adds no parties or causes of action."). The Third Circuit in *SEPTA* even recognized that "the expiration of a repose period creates a vested right to be free from liability only as against those plaintiffs *who do not have a pending action under the statute at that time*." *SEPTA*, 12 F.4th at 350. In other words, individuals like Wilde and Statton, neither of whom had a "pending action" during the repose period, cannot benefit from any tolling or relation back principles.

To effectuate the letter and purpose of ERISA's statute of repose, the Court should

dismiss Count IV.[12]

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC with prejudice.  *See*

*Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021).


Date: August 13, 2025                    */s/  Jeremy P. Blumenfeld*

                                         **MORGAN, LEWIS & BOCKIUS LLP**
                                         Jeremy P. Blumenfeld*
                                         Mary Ann F. McNulty*
                                         2222 Market Street
                                         Philadelphia, PA 19103
                                         Tel.: (215) 963-5000
                                         Fax: (215) 963-5001
                                         Email: jeremy.blumenfeld@morganlewis.com
                                         Email: mary.mcnulty@morganlewis.com

                                         Melissa D. Hill*
                                         101 Park Avenue
                                         New York, NY 10178
                                         Tel.: (212) 309-6318
                                         Fax: (212) 309-6001

---

[12] There are a handful of allegations sprinkled in the SAC contending that Defendants acted disloyally in applying the Plan's actuarial assumptions. SAC ¶ 73 ("Ecolab acted imprudently and disloyally when it used outdated and unreasonable mortality tables to calculate JSA benefits"), ¶ 128(a) ("Disloyally and knowingly reducing Class members' pension benefits through continual application of outdated and unreasonable actuarial assumptions").  To the extent Plaintiffs assert a claim for breach of ERISA's duty of loyalty premised on these allegations, it warrants dismissal for three reasons.  First, those allegations fail to raise a plausible inference that Defendants "took an act to benefit themselves" or "with that benefit as the goal," offering only conclusory assertions of disloyalty.  *Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 805 (D. Minn. 2018); *Parmer v. Land O'Lakes, Inc*., 518 F. Supp. 3d 1293, 1308 (D. Minn. 2021).  Second, any disloyalty claim "hinges entirely on the prudence-based allegations" and should likewise be dismissed.  *Larson*, 350 F. Supp. 3d at 805; *see also Allen v. Wells Fargo & Co.*, 967 F.3d 767, 777 (8th Cir. 2020) (affirming dismissal of disloyalty claim that "merely recasts the imprudence claim").  Third, the disloyalty allegations are also time-barred under ERISA's six-year statute of repose.  29 U.S.C. § 1113(1)(A).

Email: melissa.hill@morganlewis.com

Abbey M. Glenn*
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001
Email: abbey.glenn@morganlewis.com

Dylan D. Rudolph*
1400 Page Mill Road
Palo Alto, CA 94304
Tel.: (650) 843-4000
Fax: (650) 843-4001
Email: dylan.rudolph@morganlewis.com

**NILAN JOHNSON LEWIS PA**
Daniel J. Supalla (#0387064)
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
Tel.: (612) 305-7500
Fax: (612) 305-7501
Email: dsupalla@nilanjohnson.com

*Admitted Pro Hac Vice*
*Attorneys for Defendants*