IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

SCOTT BENNETT, BRAD WILDE, and DAVID STATTON, individually and as representatives of a class of similarly situated persons,

　　　　　Plaintiffs,

v.

ECOLAB, INC., THE PLAN ADMINISTRATOR OF THE ECOLAB PENSION PLAN, and THE ECOLAB PENSION PLAN,

　　　　　Defendants.

Case No. 0:24-CV-00546-JMB-SGE

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

    A.    Bennett And Wilde Lack Article III Standing ............................................2

        1.    The Accrued Benefit Is The Starting Point For Determining Actuarial Equivalence ....................................................................2

        2.    It Is Undisputed That Bennett And Wilde Have Not Been Harmed When Basing The Actuarial Equivalent Analysis On Their Accrued Benefit ....................................................................8

    B.    The Complaint Should Be Dismissed Under Rule 12(b)(6) ........................9

        1.    The Failure To Allege Facts Regarding Statton's Accrued Benefit Dooms His Claims ...........................................................9

        2.    Count IV Cannot Survive Dismissal ............................................10

        3.    Count IV Is Time-Barred ..............................................................12

III. CONCLUSION ....................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta v. Reliance Tr.*,
   2019 WL 3766379 (D. Minn. Aug. 9, 2019) ............................................................... 12

*Adams v. U.S. Bancorp*,
   No. 22-509 (D. Minn.) ................................................................................................... 8

*Anoka Orthopaedic Assocs., P.A. v. Lechner*,
   910 F.2d 514 (8th Cir. 1990) ....................................................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 12

*Atkins v. Nw. Airlines, Inc.*,
   967 F.2d 1197 (8th Cir. 1992) ................................................................................ 4, 5

*Belknap v. Partners Healthcare Sys., Inc.*,
   588 F. Supp. 3d 161 (D. Mass. 2022) ........................................................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 10

*Covic v. FedEx Corp.*,
   774 F. Supp. 3d 954 (W.D. Tenn. 2024) ....................................................................... 7

*Esden v. Bank of Boston*,
   229 F.3d 154 (2d Cir. 2000) ......................................................................................... 9

*Henderson v. Bolanda*,
   253 F.3d 928 (7th Cir. 2001) ...................................................................................... 13

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
   589 U.S. 178 (2020) .................................................................................................... 12

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
   702 F.3d 364 (7th Cir. 2012) ........................................................................................ 6

*Johnston v. Paul Revere Life Ins.*,
   241 F.3d 623 (8th Cir. 2001) ...................................................................................... 11

*Jones v. Hendrix*,
    599 U.S. 465 (2023) ............................................................................................... 6

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................................... 7

*Mandacina v. United States*,
    328 F.3d 995 (8th Cir. 2003) ............................................................................... 13

*Midwestern Mach. v. Nw. Airlines, Inc.*,
    392 F.3d 265 (8th Cir. 2004) ............................................................................... 13

*Morgan Distrib. v. Unidynamic Corp.*,
    868 F.2d 992 (8th Cir. 1989) ............................................................................... 12

*Norman v. Massey Enters.*,
    2019 WL 2357360 (E.D. Mo. June 4, 2019) ....................................................... 13

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ............................................................................................. 11

*Pender v. Bank of America Corp.*,
    756 F. Supp. 2d 694 (W.D.N.C. 2010) ................................................................ 11

*Plubell v. Merck & Co.*,
    434 F.3d 1070 (8th Cir. 2006) ............................................................................. 14

*Ret. Comm. of DAK Americas LLC v. Brewer*,
    867 F.3d 471 (4th Cir. 2017) ................................................................................. 9

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
    726 F.3d 936 (7th Cir. 2013) ................................................................................. 9

*Scott v. AT&T Inc.*,
    2025 WL 1903673 (N.D. Cal. July 9, 2025) ................................................. 10, 11

*Sec'y of Lab. v. Macy's, Inc.*,
    2022 WL 407238 (S.D. Ohio Feb. 10, 2022) ...................................................... 11

*Smith v. U.S. Bancorp.*,
    2019 WL 2644204 (D. Minn. June 27, 2019) .............................................. 1, 3, 4

*Sunder v. U.S. Bancorp Pension Plan*,
    586 F.3d 593 (8th Cir. 2009) ......................................................................  1, 3, 4, 9

*Thole v. U.S. Bank, N.A.*,
   873 F.3d 617 (8th Cir. 2017) ................................................................................... 4, 5

*Urlaub v. CITGO Petroleum Corp.*,
   2022 WL 523129 (N.D. Ill. Feb. 22, 2022) ................................................................. 5

*Wildman v. Am. Century Servs.*,
   237 F. Supp. 3d 918 (W.D. Mo. 2017) ..................................................................... 12

**Statutes**

28 U.S.C. § 417(e) ............................................................................................................*passim*

29 U.S.C. § 1002(23) ............................................................................................................ 3, 6

29 U.S.C. § 1053 ................................................................................................................... 1, 9

29 U.S.C. § 1054 ................................................................................................................1, 4, 9

29 U.S.C. § 1055 ...............................................................................................................*passim*

**Other Authorities**

26 C.F.R. § 1.401(a) ................................................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 9

I.      INTRODUCTION

The Opposition does not save the Second Amended Complaint ("SAC") from dismissal.

***First***, neither Bennett nor Wilde has Article III standing. Defendants applied Plaintiffs' preferred actuarial assumptions from 28 U.S.C. § 417(e) ("417(e)") to their accrued benefit, which showed that both currently receive *greater* benefits under the Ecolab Plan than they would under 417(e). Plaintiffs challenge using the accrued benefit as the starting point for the actuarial equivalent analysis, arguing their subsidized early retirement benefit at benefit commencement should be used instead. This theory runs headlong into ERISA's explicit text and binding precedent. Under 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)(1), those assumptions are applied to the "accrued benefit," as the starting point. Dkt. 120 ("Mem.") at 9–11, 15–17; *Sunder v. U.S. Bancorp Pension Plan*, 586 F.3d 593, 597 (8th Cir. 2009); *Smith v. U.S. Bancorp.*, 2019 WL 2644204, at *3 (D. Minn. June 27, 2019). When using the "accrued benefit" as the comparison, it is undisputed that Bennett and Wilde have no injury, warranting dismissal from this lawsuit.

***Second***, Statton fails to state a plausible claim for violation of §§ 1053(a), 1054(c)(3), or 1055(a)(1) because the SAC alleges no facts regarding his "accrued benefit." Implicitly conceding this fundamental flaw, the Opposition focuses instead on Statton's JSA and highlights the SAC's conclusory allegations of statutory violations. These cannot carry the day.

***Third***, Plaintiffs' breach of fiduciary duty claims should be dismissed because adhering to Plan terms when calculating pension benefits does not confer fiduciary status,

-1-

a prerequisite to these claims. Plaintiffs resort to citing various Plan provisions and inventing conduct that appears nowhere in the SAC. The Opposition's argument is no substitute for pleadings. The Court should dismiss Count IV because Plaintiffs failed to allege any fiduciary conduct that could conceivably give rise to a claim for breach of fiduciary duty.

*Fourth*, Plaintiffs' fiduciary breach claims are time-barred in any event. Posed with this timeliness problem, Plaintiffs hatch a theory of continuing breaches that would render ERISA's statute of repose meaningless. And they concoct new "breaches" that are not alleged in the SAC and, even if plausibly plead, would not have affected Plaintiffs' annuity calculations anyway. Trying to shoehorn Wilde and Statton's untimely claims into the relation back doctrine, Plaintiffs now argue Bennett's claim is timely. Yet the SAC contains no support for that assertion. All three Plaintiffs' fiduciary breach claims are time-barred and must be dismissed.

## II.     ARGUMENT

### A.     Bennett And Wilde Lack Article III Standing

#### 1.     The Accrued Benefit Is The Starting Point For Determining Actuarial Equivalence

Defendants assumed, for purposes of the Article III standing analysis, the 417(e) assumptions are the assumptions that should be used to determine the actuarial equivalence of Plaintiffs' JSAs. The crux of the issue is the starting point for the actuarial equivalent calculations or, as the Court put it, "what does the statute say [the Court should] compare the actual benefit amount to?" Ex. A, Tr. 25:21–26:4.

ERISA clearly provides that the accrued benefit is the starting point. Mem. at 15–17; *Sunder*, 586 F.3d at 597 (ERISA requires alternative benefit forms to "be the actuarial equivalent of the normal accrued pension benefit"); *Smith*, 2019 WL 2644204, at *3 (ERISA requires optional benefit forms to be the actuarial equivalent of the "accrued benefit," which is the single life annuity payable at "normal retirement age"). ERISA defines "accrued benefit" as the standard benefit form at normal retirement age. 29 U.S.C. § 1002(23). In other words, to determine whether Bennett and Wilde are injured or receiving a benefit that exceeds the actuarial equivalent, the Court compares their current monthly benefit amount "to the amount that this person would have received if they retired at normal retirement age." Ex. A, Tr. at 23:7–10. Defendants demonstrated that applying Plaintiffs' preferred actuarial assumptions to their accrued benefit results in *lower* benefits than they are currently receiving under the Plan. Dkt. 125 ¶¶ 19, 29. Thus, neither Bennett nor Wilde has an injury-in-fact.

Plaintiffs, however, contend that the starting point for the actuarial equivalent determination is the SLA at the time Plaintiffs commenced benefits—their subsidized early retirement benefit. Opp. at 11–13; Dkt. 130 ¶¶ 6–7. Both Bennett and Wilde commenced benefits before normal retirement age—Bennett at age 55 and Wilde at age 59—and their expert applied the 417(e) assumptions *only* to their early retirement SLA. Dkt. 130 ¶¶ 6–7. In other words, Plaintiff's expert compared one subsidized early retirement benefit (the early retirement SLA at age 55 or 59, depending on the Plaintiff) against another subsidized early retirement benefit (the 100% JSA) payable at the same age. Dkt. 130 ¶ 6. Their expert did *not* apply the 417(e) assumptions to their accrued

benefit—their age 65 SLA (the normal retirement benefit at normal retirement age). *Id*. In short, his calculations did not start with their accrued benefit.

The Eighth Circuit has roundly rejected Plaintiffs' approach. Participants only "have a right to a certain defined level of benefits, known as 'accrued benefits,'" which means "an annual benefit commencing at normal retirement age." *Thole v. U.S. Bank, N.A.*, 873 F.3d 617, 623 (8th Cir. 2017). The "accrued benefit is *not* the amount of pension payment a recipient receives by retiring early," but "is the amount of pension payment a recipient achieves at normal retirement age." *Atkins v. Nw. Airlines, Inc.*, 967 F.2d 1197, 1201 (8th Cir. 1992) (emphasis added). The Eighth Circuit reaffirmed that principle in *Sunder*, recognizing that "additional factors, *such as early retirement subsidies* and more favorable mortality tables, [are] not part of the accrued benefits." 586 F.3d at 600. And in *Smith*, this Court observed "regardless of an option as to timing or form of distribution," a participant's elected benefit "must be [the] actuarial equivalent of the accrued benefit at normal retirement age," a rule "repeatedly recognized by courts." 2019 WL 2644204, at *2 (holding ERISA requires "the accrued benefit under a defined benefit plan must be valued *in terms of the annuity that it will yield at normal retirement age*") (emphasis added).

Plaintiffs try to sweep aside this authority by arguing that *Atkins* is inapplicable, even though the Eighth Circuit interpreted the very same ERISA provision invoked here. Addressing § 1054, *Atkins* recognized employers are free to offer "early retirement discounts or service caps" that can vary depending on when a participant commences benefits. 967 F.2d at 1201. That said, the Eighth Circuit was clear in concluding that any

-4-

early retirement discount *cannot* be considered when evaluating a participant's "accrued benefit." *Id.* (collecting cases). Plaintiffs' attempt to distinguish *Thole* is similarly unavailing. Opp. at 16. Simply because *Thole* did not address JSAs does not render invalid the Eighth Circuit's consistent interpretation of "accrued benefit"—one's benefit at normal retirement age.

Without any supporting in-circuit authority, Plaintiffs resort to a lone out-of-circuit case and an implausible interpretation of a statutory provision. Plaintiffs cite *Urlaub v. CITGO Petroleum Corp.*, 2022 WL 523129, at *6 (N.D. Ill. Feb. 22, 2022), which concluded that the benefit commencement date was the starting point for determining actuarial equivalence. But *Urlaub*'s failure to assess actuarial equivalence based on the benefit at normal retirement age conflicts with in-circuit decisions interpreting the same statutory provisions that reached the opposite conclusion. *See supra* 3–4. The Court should reject Plaintiffs' invitation to depart from binding precedent.[1]

Plaintiffs also offer a strained interpretation of § 1055(d)(1)—a provision defining the term QJSA—and a related regulation. Opp. at 12. Section 1055(d)(1) does not

---

[1] Pinning the actuarial equivalent determination to the early retirement SLA would punish Defendants for offering a benefit that is more generous than what ERISA requires. *See* Opp. at 17; Dkt. 80-1 at 146:15–18 (Plaintiffs' expert agrees that "the plan provides early retirement factors which are subsidized" and "more generous than 417(e)"). Plaintiffs concede that "Ecolab decided to incentivize early retirement for its workforce by offering an early retirement benefit that is more favorable than it hypothetically would be if it were calculated using the actuarial assumptions set forth in [S]ection 417(e)." Opp. at 17 n.9. Accounting for the early retirement subsidy, Bennett and Wilde are receiving *more* than their accrued benefit because, as Plaintiffs recognize, "the early retirement subsidy appears to be higher than required by ERISA's statutory minimums." Opp. at 17.

address the accrued benefit. Rather, it provides that a JSA shall be "the actuarial equivalent of a single life annuity for the life of the participant." Plaintiffs argue that "for the life of the participant" means the SLA at benefit commencement date is the starting point for the actuarial equivalent analysis. That strains credulity. The commonsense reading of "for the life of the participant" is that the annuity must provide equivalent value until the annuitant's death. In practice, a participant's benefit is adjusted based on when they retire—before or after the normal retirement age. *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 367 (7th Cir. 2012) (Posner, J.) ("ERISA requires that an early retiree receive the 'actuarial equivalent' of the pension benefits to which he would be entitled at normal retirement age," which is discounted to present value based on one's retirement date). This adjustment ensures participants receive the same value while receiving monthly annuity payments for the rest of their lives. But § 1055(d)(1) says nothing about the starting point for the actuarial equivalent analysis.

Meanwhile, § 1055(a)(1) provides that "the *accrued benefit* payable to [a participant who does not die before the annuity starting date] shall be provided in the form of a qualified and joint survivor annuity." 29 U.S.C. § 1055(a)(1). In other words, a QJSA is based on the "accrued benefit" which, by definition, is the normal retirement benefit at normal retirement age. 29 U.S.C. § 1002(23). Plaintiffs' contorted interpretation of § 1055(d)(1) cannot prevail because "[b]asic principles of statutory interpretation require that we construe [statutory provisions] in harmony, not set them at cross-purposes." *Jones v. Hendrix*, 599 U.S. 465, 478 (2023).

Grasping at straws, Plaintiffs turn to 26 C.F.R. § 1.401(a), a regulation promulgated under the Internal Revenue Code that governs tax qualifications. Opp. at 11–12. Other courts assessing substantially similar allegations have held this regulation does not apply to annuities and rejected its application in an analogous context. *Covic v. FedEx Corp.*, 774 F. Supp. 3d 954, 958 (W.D. Tenn. 2024) (finding 26 C.F.R. § 1.401(a) is neither "enforceable or applicable to § 1055(d) and, consequently, its actuarial equivalence requirement"); *Belknap v. Partners Healthcare Sys.*, 588 F. Supp. 3d 161, 171–75 (D. Mass. 2022) (same).[2]

Finally, Plaintiffs mischaracterize Defendants' argument, claiming Defendants posit that only participants who retire "precisely" at age 65 are subject to the actuarial equivalent requirement. Opp. at 8–10. Not so. Defendants' position is simply what ERISA requires—a JSA must be actuarially equivalent to the "accrued benefit" at normal retirement age. This comports with Plaintiffs' own allegations. The SAC alleges they are receiving "less than the 'actuarial equivalent' of their vested *accrued benefit*." Dkt. 114 ("SAC") ¶¶ 2, 93, 104, 113, 126 (emphasis added). The Court should reject the Opposition's attempt to recast their claims in arguing that this lawsuit only focuses on the JSA conversion factor. *See* Opp. at 18.

---

[2] Even if the regulation applied to annuity benefits, it is not entitled to any deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ("[C]ourts may not defer to an agency interpretation of the law simply because a statute is ambiguous;" rather, it is a court's role "to independently interpret the statute and effectuate the will of Congress").

### 2. It Is Undisputed That Bennett And Wilde Have Not Been Harmed When Basing The Actuarial Equivalent Analysis On Their Accrued Benefit

Plaintiffs claim Defendants' expert "agrees that the Plan's assumptions result in underpayment" because he simply recognizes that the Plan has JSA conversion factors. Opp. at 21. This argument is a red herring. Defendants' expert Sher applied the 417(e) assumptions to Plaintiffs' accrued benefit—their age 65 SLA—which is the "amount that this person would have received if they retired at normal retirement age." Ex. A, Tr. at 23:7–10; SAC ¶¶ 17, 27. Both Bennett and Wilde would be *worse off* using the 417(e) assumptions. SAC ¶ 19 (Bennett would receive $932.21 monthly benefit versus current benefit of $1,323.55); *id.* ¶ 29 (Wilde would receive $3,953.07 monthly benefit versus current benefit of $5,032.86).

Meanwhile, Plaintiffs' expert pins his calculations to the subsidized early retirement benefit, claiming the early retirement factor is "separate" from the "conversion of an SLA to a JSA." Opp. at 19. That is irrelevant. ERISA's statutory provisions are clear—each statute on which their claims are based rely on the "accrued benefit" or the normal retirement benefit payable at normal retirement age. Indeed, in *Adams v. U.S. Bancorp*, No. 22-509 (D. Minn.), which likewise involved actuarial equivalence, Plaintiffs' expert Altman opined the challenged plan should have used the 417(e) assumptions when converting the "accrued benefit" to the early retirement benefit. Dkt. 80-1 at 154:25–157:15. That is what Defendants' expert does here. Dkt. 125 ¶¶ 16–17, 26–27; 80-1 at 83:13–16. And Altman confirmed these calculations are accurate. *Id*. at 82:17–83:16, 126:20–127:3.

Altman's testimony in cases involving lump sum distributions highlights his results-driven opinion. Those calculations are governed by §§ 417(e) and 1054(c)(3)—as alleged here—and Altman calculated these benefits by starting with the accrued benefit and applying the 417(e) assumptions. Dkt. 80-1 at 109:25–110:12. He admitted when calculating lump sums under 417(e), a plan's early retirement factor "doesn't factor into the calculation." *Id*. at 92:14–93:14. Yet those lump sum calculations are governed by the same statutory provisions at issue here, §§ 1053, 1054, 1055, and are likewise based on the "accrued benefit." *E.g., Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000); *Sunder*, 586 F.3d at 599–600; *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 726 F.3d 936, 938 (7th Cir. 2013); *Ret. Comm. of DAK Americas LLC v. Brewer*, 867 F.3d 471, 481 (4th Cir. 2017). The Court should reject Altman's inconsistent methodology here.

### B.     The Complaint Should Be Dismissed Under Rule 12(b)(6)

#### 1.     The Failure To Allege Facts Regarding Statton's Accrued Benefit Dooms His Claims

Defendants previously showed that Statton's statutory violation claims should be dismissed because he failed to allege any facts regarding his accrued benefit, the cornerstone of his actuarial equivalence claims. Mem. at 20–23. Doubling-down on Statton's JSA at benefit commencement date, Plaintiffs argue they have stated a claim because they allege Statton's JSA was determined using the Plan's assumptions. Opp. at 23–24. Again, Plaintiffs close their eyes to ERISA's text, which bases actuarial

equivalence on the "accrued benefit." Mem. at 10. The Opposition fails to identify any factual allegation in the SAC pertaining to Statton's accrued benefit—his age 65 SLA.

While Plaintiffs contend that, "taken together," the SAC's conclusory assertions "raise a reasonable inference" of an ERISA violation, Opp. at 24, simply stringing together a few threadbare contentions of statutory violations does not state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (alleging statutory violation "without [] further factual enhancement [] stops short of the line between possibility and plausibility."). Here, the critical contention is whether the Plan provides a benefit that is less than the actuarial equivalent of Statton's accrued benefit, and the SAC is devoid of facts in this regard.[3] Counts I–III must be dismissed.

### 2. Count IV Cannot Survive Dismissal

Plaintiffs' fiduciary breach claims should be dismissed, and nothing in the Opposition compels a different result. Plaintiffs fail to address—much less distinguish— *Scott v. AT&T Inc.*, 2025 WL 1903673, at *8 (N.D. Cal. July 9, 2025), the recent decision they submitted (Dkt. 112), which dismissed a similar fiduciary breach claim in an actuarial equivalence case on this ground. This Court should do the same.

Instead, Plaintiffs argue that merely alleging that the Plan Administrator is a fiduciary suffices to allege fiduciary status. Opp. at 28. They are wrong. Rather, they must plausibly allege the Plan Administrator "was acting as a fiduciary (that is, was

---

[3] Plaintiffs assert Defendants are ignoring "simple arithmetic," but there are no facts alleged in the SAC on which to do that math, much less support their argument that Statton's benefit is "less than ERISA requires." Opp. at 24.

preforming a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). This is because "[f]iduciary status under ERISA is not an all or nothing concept," as a "court must ask whether a [defendant] is a fiduciary with respect to the *particular activity* in question." *Johnston v. Paul Revere Life Ins.*, 241 F.3d 623, 632 (8th Cir. 2001). Under ERISA, "discretion is the benchmark for fiduciary status." *Id.* (cleaned up); *see Scott*, 2025 WL 1903673, at *8 ("following clear and mandatory Plan terms for the calculation of benefits" does not give rise to fiduciary status); SAC ¶ 36 (alleging Plan Administrator had "*discretionary* authority and/or *discretionary* responsibility") (emphases added). The "performance of ministerial functions," such as calculating pension benefits according to plan terms, "does not entail discretionary authority or responsibility within the meaning of [ERISA]." *Anoka Orthopaedic Assocs., P.A. v. Lechner*, 910 F.2d 514, 517 (8th Cir. 1990); Mem. at 23–24.[4] Although Plaintiffs wish the Plan used different assumptions, that is a question of Plan design, which falls squarely in settlor territory. Mem. at 23–24.

Perhaps recognizing this, the Opposition identifies so-called "fiduciary" conduct. First, the Opposition asserts the Plan Administrator "instructed the Trustee" to pay benefits and "exercised control over the Plan's assets." Opp. at 30. No such facts are alleged in the SAC, and Plaintiffs cannot amend their pleadings via argument. *See*

---

[4] Plaintiffs loudly proclaim that the Plan Administrator may not simply adhere to Plan terms, relying on *Pender v. Bank of America Corp.*, 756 F. Supp. 2d 694, 704 (W.D.N.C. 2010), an outlier decision that other courts have declined to follow. *See Sec'y of Lab. v. Macy's, Inc.*, 2022 WL 407238, at *7 (S.D. Ohio Feb. 10, 2022). But the overwhelming "weight of applicable case law" holds there is no claim for breach of fiduciary duty for adhering to plan terms. *Id.*; Mem. At 23-24.

*Morgan Distrib. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). And Plaintiffs challenge the calculation of their benefits pursuant to the Plan's terms—not fiduciary conduct. Next, the Opposition contends the Plan Administrator "conveyed information about participants' benefits," pointing to allegations addressing Plan provisions on lump sum calculations and minimum funding requirements and a conclusory assertion of "misleading" information provided about the Plan. Opp. at 31 (citing SAC ¶¶ 76–82, 128). These allegations do not establish fiduciary status or a breach. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5]

### 3. Count IV Is Time-Barred

Contrary to Plaintiffs' contention, the Supreme Court has confirmed that ERISA fiduciary breach claims are subject to a six-year statute of repose. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 180 (2020); *see Acosta v. Reliance Tr.*, 2019 WL 3766379, at *16 (D. Minn. Aug. 9, 2019) (dismissing fiduciary breach claim as "barred by ERISA's six-year statute of repose").[6] Plaintiffs seek to avoid the statute's reach by manufacturing so-called "breaches" purportedly occurring after Plaintiffs commenced benefits. First they contend, in essence, that the repose period continually refreshed every passing second the Plan retained its assumptions. Opp. at 34–35. This would

---

[5] The Opposition devotes pages to discussing Plan provisions that purportedly address the Plan Administrator's responsibilities, Opp. at 29-33, none of which is alleged in the SAC. Plaintiffs have no excuse for failing to plead the information they claim demonstrates fiduciary status, given they have had the Plan documents since Defendants moved to dismiss Plaintiffs' original complaint.

[6] *Wildman v. Am. Century Servs.*, 237 F. Supp. 3d 918, 925 (W.D. Mo. 2017), cited at Opp. 33-34, is inapposite because it simply addressed whether claims for imprudent investments arose before or after the plaintiffs executed releases.

render the repose period meaningless and without legal effect. *Cf. Midwestern Mach. v. Nw. Airlines, Inc.*, 392 F.3d 265, 270 (8th Cir. 2004) ("[A]cts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations.") (quotations omitted). They next argue that amending the Plan in 2020 constituted a breach. Opp. at 35. But no such thing is alleged in the SAC. Nor would it affect any of the Plaintiffs, who commenced benefits (and whose annuities were calculated using the Plan's assumptions) years earlier. Mem. at 5–8.[7]

As explained in Defendants' opening brief, the relation back doctrine cannot rescue Wilde and Statton's time-barred claims because Bennett's claim was untimely too. Mem. at 28–29; *see Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003) ("The relation back doctrine allows untimely claims to be deemed timely by treating the claims as if they had been filed when the *timely* claims were filed.") (emphasis added); *Norman v. Massey Enters.*, 2019 WL 2357360, at *2 (E.D. Mo. June 4, 2019); *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001). Plaintiffs' only response is to vaguely assert that an unidentified breach "in 2020 or later" renders Bennett's claim timely, reversing course from their prior position. Opp. at 35. Yet the Opposition does not cite any allegation in the SAC supporting this contention, because there is none.

---

[7] The half-baked theory that "misleading information" constituted a breach fares no better. Opp. at 34. The SAC does not allege any such communication(s) or when they were allegedly made.

Finally, although Plaintiffs invoke *Plubell v. Merck & Co.*, 434 F.3d 1070 (8th Cir. 2006), that decision is inapposite because it did not address whether the relation back doctrine applies to an untimely original claim, unlike here.

The Court should dismiss all three Plaintiffs' untimely fiduciary breach claims.

### III.   CONCLUSION

For these reasons, the Court should grant Defendants' Motion to Dismiss the SAC.

Date: September 10, 2025

Respectfully submitted,

*/s/  Jeremy P. Blumenfeld*

**MORGAN, LEWIS & BOCKIUS LLP**
Jeremy P. Blumenfeld*
Mary Ann F. McNulty*
2222 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5000
Fax: (215) 963-5001
Email: jeremy.blumenfeld@morganlewis.com
Email:  mary.mcnulty@morganlewis.com

Melissa D. Hill*
101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6318
Fax: (212) 309-6001
Email: melissa.hill@morganlewis.com

Abbey M. Glenn*
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001
Email: abbey.glenn@morganlewis.com

Dylan D. Rudolph*

-14-

1400 Page Mill Road
Palo Alto, CA 94304
Tel.: (650) 843-4000
Fax: (650) 843-4001
Email: dylan.rudolph@morganlewis.com

**NILAN JOHNSON LEWIS PA**
Daniel J. Supalla (#0387064)
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
Tel.: (612) 305-7500
Fax: 612-305-7501
Email: dsupalla@nilanjohnson.com

*\*Admitted Pro Hac Vice*

*Attorneys for Defendants*

-15-