## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Scott Bennett, Brad Wilde, and David Statton, individually and as representatives of a class of similarly situated persons, | File No. 24-CV-0546 (JMB/SGE) |
| Plaintiffs, | |
| v. | **ORDER** |
| Ecolab, Inc.; the Plan Administrator of the Ecolab Pension Plan; and the Ecolab Pension Plan, | |
| Defendants. | |

---

Brock J. Specht and Elizabeth Binczik, Nichols Kaster, PLLP, Minneapolis, MN; Paul J. Lukas, Jackson Lewis PC, Minneapolis, MN; Mary Bortscheller, Feinberg, Jackson, Worthman & Wasow LLP, St. Paul, MN; and Nina Wasow, *pro hac vice*, and Todd Jackson, *pro hac vice*, Feinberg, Jackson, Worthman & Wasow LLP, Berkeley, CA; for Plaintiffs Scott Bennett, Brad Wilde, and David Statton.

Daniel J. Supalla, Nilan Johnson Lewis PA, Minneapolis, MN; Abbey M. Glenn, *pro hac vice*, Morgan, Lewis & Bockius LLP, Washington, DC; Dylan D. Rudolph, *pro hac vice*, Morgan, Lewis & Bockius LLP, Palo Alto, CA; Jeremy P. Blumenfeld and Mary Ann Ferguson McNulty, *pro hac vice*, Morgan, Lewis & Bockius LLP, Philadelphia, PA; and Melissa D. Hill, *pro hac vice*, Morgan, Lewis & Bockius LLP, New York, NY; for Defendants Ecolab, Inc., the Plan Administer of the Ecolab Pension Plan, and the Ecolab Pension Plan.

---

This matter is before the Court on Defendants Ecolab, Inc., the Plan Administrator of the Ecolab Pension Plan, and the Ecolab Pension Plan's (together, Ecolab) Motion to Dismiss Plaintiffs Scott Bennett, Brad Wilde, and David Statton's (together, Plaintiffs) Second Amended Complaint (SAC).  (Doc. No. 114 [hereinafter, "SAC"].)  In this action, Plaintiffs bring claims as named representatives of a putative class under the Employee

Retirement Income Security Act of 1974 (ERISA) against Ecolab regarding the calculation of Plaintiffs' pension benefits. Ecolab now moves to dismiss all counts of the SAC. For the reasons explained below, the Court grants Ecolab's motion in part and denies it in part.

## BACKGROUND

Ecolab Inc. is a public company headquartered in St. Paul, Minnesota. Plaintiffs are three retired employees of Ecolab. Ecolab administers the Ecolab Pension Plan (the Plan), a defined benefit pension plan that is available to its current and former employees.

### A.    The Plan

The Plan offers several optional forms of benefits. Unmarried participants receive their retirement benefits in the form of a single life annuity (SLA). (SAC ¶ 3.) The default form of benefit for married participants is a joint and survivor annuity (JSA). (*Id.* ¶ 4.) JSAs are designed to continue for the duration of the lives of both spouses. (*Id.*) If the Plan-participant spouse dies first, the surviving spouse continues receiving benefits from the Plan for the duration of his or her lifetime. (*Id.*) The Plan includes three forms of JSAs: a 50%, 75%, or 100% survivor annuity. (*Id.*) These percentages refer to the benefit the surviving spouse receives after the Plan participant's death. (*Id.*) A 50% survivor annuity means that the surviving spouse will receive half the monthly benefits that the couple received when the Plan participant was still alive. A 100% survivor annuity means that the surviving spouse will continue to receive the same payment after the Plan participant's death.

The Plan also offers an early retirement option. (*See* Doc. No. 121-3 § 4.5(D).) The Plan sets its normal retirement age at sixty-five. (*Id.* at 18.) However, participants may

elect to begin receiving benefits early.  (*Id.* § 4.5(D).)  Participants who elect to retire early have their benefits reduced by 1/280 for every month prior to their sixty-second birthday. (*Id.*)

Plaintiffs Scott Bennett, Brad Wilde, and David Statton are retired former employees of Ecolab and participants in the Plan.  (SAC ¶¶ 27–29.)  Bennett's benefits commenced in 2014, and Wilde and Statton's benefits commenced in 2018.  (Doc. No. 122 at 3; Doc. No. 123 at 2; Doc. No. 124 at 2.)  Upon retirement, Bennett, Wilde, and Statton were permitted to select between various forms of monthly payments for the dispersion of their pension benefits.  Bennett, Wilde, and Statton are all married, and they all selected a JSA benefit.  (SAC ¶¶ 27–29.)  Bennett selected the 100% JSA, which reduced his monthly payments from $1,448.09 (what he would have received as an SLA) to $1,363.96.  (Doc. No. 122 at 4.)  Wilde also selected the 100% JSA, which reduced his monthly payments from $5,952.53 to $5,032.86.  (Doc. No. 123 at 3.)  Both Bennett and Wilde also took advantage of the Plan's early retirement option; Bennett's benefits commenced at age fifty-five (Doc. No. 122 at 3), and Wilde's benefits commenced at age fifty-nine.  (Doc. No. 123 at 3.)  Bennett's and Wilde's benefits were additionally reduced according to the early retirement reduction set by the terms of the Plan.  (*See* Doc. No. 121-3 § 4.5(D).)  Statton did not retire early; his benefits commenced at age sixty-six.  (Doc. No. 124 at 2.)  Statton selected the 50% JSA.  (SAC ¶ 29.)

ERISA requires that a pension plan's JSA be "actuarially equivalent" to the SLA a plan participant would otherwise be entitled to.  *See* 29 U.S.C. § 1055(d)(1)(B).  However, ERISA does not specify exactly how companies must convert SLAs to JSAs, nor what

3

actuarial equivalence requires.  Indeed, the meaning of ERISA's "actuarial equivalence" requirements has been the subject of a wave of litigation in recent years.  *See, e.g.*, *Masten v. Metro. Life Ins. Co.*, No. 18-CV-11229 (DEH), 2024 WL 4350909, at *7 (S.D.N.Y. Sept. 30, 2024); *Franklin v. Duke Univ.*, No. 1:23-CV-833, 2024 WL 1740479, at *3 (M.D.N.C. Apr. 23, 2024); *Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 169 (D. Mass. 2022); *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742, 754 (D. Minn. 2022); *Smith v. U.S. Bancorp*, No. 18-CV-3405 (PAM/KMM), 2019 WL 2644204, at *3 (D. Minn. June 27, 2019).

The conversion from an SLA to a JSA is necessarily reliant on actuarial assumptions.  Because JSAs offer the possibility of a longer term of payout, the conversion from an SLA to a JSA reduces the monthly benefit according to actuarial assumptions regarding interest rates and mortality data.  Compliance with ERISA requires that when the benefit is converted from an SLA to a JSA, the overall payment is actuarially equivalent to the benefit the employee would have received as an SLA.  In performing the SLA-to-JSA conversions for Plaintiffs, Ecolab relied upon the following three factors: (1) an interest rate of 7.5%; (2) a gender-based weighing figure; and (3) a 1971 Group Annuity Table (1971 Table) reflecting average life expectancies.  (SAC ¶ 62.)  The present litigation concerns the third factor: the 1971 Table.

## B.    This Action

Plaintiffs bring the instant action alleging four counts of wrongdoing by Ecolab. Plaintiffs contend that Ecolab impermissibly relied on outdated life expectancy rates when calculating Bennett's, Wilde's, and Statton's JSAs, as life expectancy has "grown steadily

since 1971." (SAC ¶ 12.) Plaintiffs contend that the Plan's reliance on the 1971 Table violates ERISA's actuarial equivalence requirements and has caused proposed class members to lose "millions of dollars in benefits" in the aggregate, effectively "penaliz[ing] participants for being married." (*Id*. ¶¶ 71, 75). Plaintiffs bring the following four claims: violation of the joint and survivor annuity requirement in 29 U.S.C. § 1055 (Count I); violation of the actuarial equivalence requirements in 29 U.S.C.§ 1054 (Count II); violation of ERISA's anti-forfeiture provisions in 29 U.S.C.§ 1053 (Count III); and breaches of fiduciary duty (Count IV).

## DISCUSSION

Ecolab now moves to dismiss all four counts of the SAC. (Doc. No. 118.) Ecolab moves to dismiss the claims of Plaintiffs Bennett and Wilde under Rule 12(b)(1) for lack of subject matter jurisdiction and the claims of Plaintiff Statton under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Ecolab also moves to dismiss Count IV as to all three Plaintiffs.[1] The Court addresses each in turn.

### I.    SUBJECT MATTER JURISDICTION OVER BENNETT'S AND WILDE'S CLAIMS IN COUNTS I AND III

Ecolab first raises a factual attack under Rule 12(b)(1), arguing that the Amended Complaint should be dismissed because Plaintiffs Bennett and Wilde have failed to demonstrate an injury-in-fact necessary to confer standing. The Court agrees that the SAC

---

[1] At the hearing on the Motion to Dismiss, Plaintiffs conceded that Count II should be dismissed because section 1054 is inapplicable to their claims. The Court agrees and grants Ecolab's unopposed request to dismiss Count II as to all Plaintiffs.

fails to allege that either Bennett or Wilde has suffered an injury in fact and, therefore, grants Ecolab's motion to dismiss Counts I and III as to Plaintiffs Bennett and Wilde.

As a threshold matter, the Court acknowledges that when resolving a factual attack to subject-matter jurisdiction under Rule 12(b)(1), as here, courts may consider matters outside of the pleadings. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *W. Neb. Res. Council v. Wyo. Fuel Co.*, 641 F. Supp. 128, 139 (D. Neb. 1986) (quotation omitted). The Plaintiffs bear the burden of proof to establish the existence of jurisdiction. *Id.*

### A.  Count I: Violation of 29 U.S.C. § 1055

Ecolab contends that Plaintiffs have not suffered an injury-in-fact because, had the Plan applied section 417(e) assumptions to both the SLA-to-JSA conversion and the early retirement factor, Plaintiffs would have received a smaller, not larger, monthly benefit. Plaintiffs disagree, arguing that Ecolab is distorting the effect of the section 417(e) factors. Because Ecolab's early retirement policy resulted in actual benefits received by Bennett and Wilde that exceed the amounts they would have received under the Complaint, the Court grants Ecolab's motion to dismiss Count I as to Bennett and Wilde.

Section 1055 provides that "the accrued benefit payable to [a vested plan] participant shall be provided in the form of a qualified joint and survivor annuity," and that this joint and survivor annuity must be "the actuarial equivalent of a single annuity for the

life of the participant." 29 U.S.C. § 1055(a)(1), (d)(1)(B). "An accrued benefit is not the amount of pension payment a recipient receives by retiring early." *Atkins v. Nw. Airlines, Inc.*, 967 F.2d 1197, 1201 (8th Cir. 1992) (citing 29 U.S.C. § 1002(23)(A)). Instead, "it is the amount of pension payment a recipient achieves at normal retirement age." *Id.* "Therefore, early retirement discounts are not 'accrued benefits' under ERISA." *Id.* (concluding that "the lifting of the early retirement discount at age sixty does not constitute a change or a reduction in an 'accrued benefit' under ADEA or ERISA") (citing *Am. Stores Co. v. Retirement Plan*, 928 F.2d 986, 990 (10th Cir. 1991) (citations omitted)). "[T]o the extent the early retirement benefits actuarially exceed the normal retirement benefits, the excess is not an accrued benefit and may, therefore, be reduced by the plan sponsor without violating ERISA." *Am. Stores Co.*, 928 F.2d at 990. Plaintiffs' proposed calculations erroneously treat their early retirement benefits as if they were accrued benefits. (*See* Doc. No. 130 at 6–7.)

To have standing to raise a claim that an employer has violated section 1055, plaintiffs must have suffered a concrete injury in fact. *See Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809, 813 (8th Cir. 2024) (explaining that "even in the context of a[n ERISA] statutory violation, a plaintiff must still demonstrate a concrete injury"); *Thorne v. U.S. Bancorp*, No. 18-CV-3405 (PAM/KMM), 2021 WL 1977126, at *2 (D. Minn. May 18, 2021) (concluding that, where plaintiffs' preferred method of calculating ERISA benefits did not result in higher benefits to all potential class members, those potential class members "lack[ed] Article III standing").

In this case, both Bennett and Wilde retired many years before the normal retirement

7

age of sixty-five: Bennett's benefits commenced at age fifty-five (Doc. No. 122 at 3), and Wilde's benefits commenced at age fifty-nine. (Doc. No. 123 at 3.) Thus, for both Bennett and Wilde, there are two conversions that occur: (1) a conversion to adjust for Bennett's and Wilde's early retirement rather than the normal retirement age of sixty-five, and (2) a conversion from SLA-to-JSA. For the first conversion, Ecolab permitted employees over the age of fifty-five to elect to begin receiving their benefits, subject to reduction of 1/280 for each month by which the date of commencement preceded the participant's sixty-second birthday. (*See* Doc. No. 121-3 § 4.5(D).) The Plan's Early Retirement Factor, therefore, is not the same as the minimum conversion factor that is required by section 417(e) actuarial assumptions to adjust for early retirement. For the second conversion, Ecolab applied a factor that is based on the Plan's outdated mortality assumptions, and not the minimum conversion factor required by section 417(e) actuarial assumptions. (Doc. No. 130 at 6–7.)

The standing argument requires a comparison between the actual amounts that Bennett and Wilde received (using Ecolab's subsidized retirement benefit for the first conversion and the Plan's outdated SLA-to-JSA conversion factor for the second conversion) and the hypothetical amounts that Bennett and Wilde would have received had Ecolab relied on the section 417(e) actuarial assumptions (the minimum amounts required by law) to make the two conversions. Because of the subsidized early retirement benefit that both Bennett and Wilde received, both plaintiffs actually received more than what was required by law.

Taking Bennett as an example, the Court concludes that Bennet's SLA would have

been $2,068.70 if he had retired at age 65.  (Doc. No. 125 at 6–7; Doc. No. 130 at 6.)

Applying Ecolab's subsidized retirement benefit (in Bennet's case, the factor is 0.7) to

make the first conversion, the age 55 SLA is $1,448.09.  (*Id.*)  By comparison, using section

417(e) assumptions (in Bennet's case, the factor is 0.4818), would have resulted in a

hypothetical age 55 SLA of only $996.70.  (*Id.*)  Next, applying the Plan's SLA-to-JSA

conversion to the age 55 SLA of $1,448.09 (in Bennett's case, this factor is 0.9140), the

age 55 100% JSA is $1,323.55 (Bennett's current retirement benefit).  (*Id.*)  By comparison,

using section 417(e) assumptions for the SLA-to-JSA conversion of the age 55 SLA of

$996.70 (in Bennett's case, the factor is 0.9353), would result in an age 55 100% JSA of

$932.21.     (*Id.*)   Bennett's current retirement benefit of $1,323.55 exceeds the alternate

hypothetical amount of $932.21.  (*Id.*)  Likewise, Wilde's current retirement benefit of

$5,032.86 exceeds the alternate hypothetical amount resulting from use of section 417(e)

assumptions of $3,953.07.  (Doc. No. 125 at 10; Doc. No. 130 at 7.)  Neither Bennett nor

Wilde has experienced an injury in fact, and neither has standing to assert a claim that

Ecolab has violated section 1055.

Plaintiffs argue that this analysis is unfair because it amounts to disparate treatment

of single and married employees.  (Doc. No. 130 ¶ 7 (arguing that "plans may not offset

punitive JSA conversion factors with generous early retirement factors" because "if plans

were permitted to offset in that way, non-married participants would receive the benefit of

early retirement subsidies, while married participants would . . . forfeit that subsidy through

the application of offsetting punitive JSA factors").)  Even assuming that in some way

Ecolab's early retirement subsidy treated married retirees less favorably than unmarried

Ecolab retirees, that does not confer standing on Bennett or Wilde for a violation of section 1055, and Plaintiffs raise no discrimination claim based on marital status or cite any binding[2] legal authority for the proposition that ERISA requires exact parity between married and unmarried retirees.

For these reasons, the Court grants Ecolab's motion to dismiss Count I as to Plaintiffs Bennett and Wilde.

### B.       Count III: Violation of 29 U.S.C. § 1053

Ecolab also moves to dismiss Count III, arguing that the Plaintiffs lack standing. The Court agrees as to Bennett and Wilde and grants the Motion as it relates to these two Plaintiffs, but because Statton did not retire early, the Court denies the motion as to him.

Count III arises under 29 U.S.C. § 1053, ERISA's anti-forfeiture clause. This provision of the ERISA statute requires pension plans to provide "that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). The clause has generally been enforced to prevent plans from amending or suspending a participant's benefits once those benefits have vested. *See*

---

[2] Plaintiffs cite to *Urlaub v. CITGO Petroleum Corp.*, 2022 WL 523129, at *5 (N.D. Ill. Feb. 22, 2022), which, partially quoting *Boggs v. Boggs*, 520 U.S. 833, 843 (1997), expresses a concern that the intent of ERISA's protection of the "economic security of surviving spouses" would be undermined "by allowing employers to give a married worker a lower pension than an otherwise similarly situated unmarried worker" (quotation omitted). *Urlaub*, however, is not binding on this Court. Moreover, *Boggs* is not a marital discrimination case, and the *Boggs* Court is taken out of context in *Urlaub*; the holding in *Boggs* actually is concerned with how "the economic security of surviving spouses would be undermined by allowing *a predeceasing spouse's heirs and legatees to have a community property interest in the survivor's annuity*" (emphasis added). In other words, *Boggs* did not refer to married vs. unmarried retirees and certainly does not mandate denial of Ecolab's motion in this case.

*Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 311 (8th Cir. 1979*)* (explaining the historical intent of section 1053); *see also Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*, 574 F.3d 644, 651 (8th Cir. 2009) (holding that section 1053 prohibits plans from suspending retirees' vested benefits).

Plaintiffs here do not contend that the benefits provided under the Plan were impermissibly reduced after they vested. Rather, Plaintiffs bring a more novel form of section 1053(a) claim, alleging that the Plan's use of outdated mortality tables indirectly constituted an illegal forfeiture of Plaintiffs' vested benefits. (SAC ¶ 116.) Plaintiffs argue that the SLA-to-JSA conversion relied on an adjustment in excess of reasonable actuarial assumptions, which constitutes an impermissible forfeiture.

By the terms of the statute, the "normal retirement benefit" to which Plaintiffs have a nonforfeitable right is the annuity they would have earned under the Plan commencing at the Plan's normal retirement age of sixty-five.[3] *See DuBuske v. PepsiCo, Inc.*, No. 18-CV-11618 (VB), 2019 WL 4688706, at \*4 (S.D.N.Y. Sept. 25, 2019), *vacated as to other claims*, No. 18-CV-11618 (VB), 2019 WL 5864995 (S.D.N.Y. Nov. 8, 2019) (affirming section 1053 dismissal on similar facts, finding that ERISA's anti-forfeiture clause protects

---

[3] ERISA defines "normal retirement benefit" as "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." 29 U.S.C. § 1002(22). If a plaintiff's benefit "is payable as an annuity in the same form upon early retirement and at normal retirement age"—as in this case it was—the "greater benefit is determined by comparing the amount of such annuity payments." 26 C.F.R. § 1.411(a)-7(c)(2)(i). Under the terms of the Plan, if a participant commenced his or her benefits before age sixty-two, his or her benefit was subject to an early retirement reduction. *See* Doc. No. 121-3 § 4.5(D). Therefore, the greater benefit, for purposes of section 1002(22), was the annuity at normal retirement age.

only benefits at normal age of retirement, not actual age of retirement); *Atkins*, 967 F.2d at 1201 (concluding that an accrued benefit under sections 1053 and 1054 "is the amount of pension payment a recipient achieves at normal retirement age").

Thus, "the employee receives their total nonforfeitable benefit pursuant to [section 1053(a)] so long as the employee receives *at least* the actuarial value of their normal retirement age benefit." *Engers v. AT&T*, No. 98-CV-3660 (WGB), 2002 WL 32159586, at *8 (D.N.J. Oct. 17, 2002), *aff'd sub nom. Engers v. AT & T, Inc.*, 466 F. App'x 75 (3d Cir. 2011). "Any positive difference between what the employee is offered and the present actuarial value of the employee's accrued normal retirement benefit is properly considered a subsidy" unprotected by ERISA's anti-forfeiture provisions. *Id; see also Bellas v. CBS, Inc.*, 221 F.3d 517, 525 (3d Cir. 2000) ("The provision of an early retirement benefit greater than the actuarial equivalent of the normal retirement benefit is referred to as a subsidized early retirement.").

Therefore, even if section 1053(a) prohibits the use of outdated mortality tables in the JSA-to-SLA conversion—which it is not clear that it does[4]—Plaintiffs Bennett and

---

[4] District courts have split on whether ERISA's anti-forfeiture clause can be used to challenge a Plan's reliance on outdated mortality tables. *Compare Paieri v. W. Conf. of Teamsters Pension Tr.*, No. 2:23-CV-00922-LK, 2024 WL 3455269, at *10 (W.D. Wash. June 21, 2024) (finding plaintiff's allegations of plan's use of outdated mortality tables sufficient to state a claim for violation of section 1053); *Franklin*, 2024 WL 1740479, at *3 (similar); *Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 36 (S.D.N.Y. 2021) ("[T]he allegations here—reduction in benefits based on unreasonable actuarial conversion—state a violation of ERISA's non-forfeiture requirements."), *with Drummond v. S. Co. Servs., Inc.*, No. 2:23-CV-00174-SCJ, 2024 WL 4005945, at *7 (N.D. Ga. July 30, 2024) (dismissing section 1053 claim on ground that "the statutory definition of 'nonforfeitable' . . . does not guarantee a particular amount or a method for calculating the

Wilde have not suffered a cognizable injury under this section because they have not suffered a monetary loss of their nonforfeitable benefits. As discussed above in Part I.A, experts for both parties agree that Bennett and Wilde currently receive *more* than the actuarial equivalent of their normal retirement benefit commencing at normal retirement age. (*See* Doc. No. 125 ¶¶ 19, 29; Doc. No. 130 at 6–7.) Thus, they lack standing to allege a violation of section 1053. Ecolab's motion to dismiss Count III as to Bennett and Wilde is granted.

However, for the reasons stated below in Part II, Statton has plausibly alleged a violation of section 1053 because receiving a lower monthly payment as a result of Ecolab's outdated SLA-to-JSA factor affects the nonforfeiture requirements of section 1053. Unlike Bennett and Wilde, Statton did not retire early, and so he was never subject to Ecolab's generous early retirement factor. Without the generous early retirement factor, there was nothing to offset the outdated SLA-to-JSA factor as applied to Statton's benefits. "Congress in ERISA set outer bounds on permissible accrual practices" and "[c]ourts have held that excessive actuarial reductions may breach these outer bounds and constitute forfeitures under § 1053(a)." *Franklin*, 2024 WL 1740479, at *4 (quotation omitted) (citing cases); *see also Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 36 (S.D.N.Y. 2021) ("Courts have recognized that a reduction of the total value of all monthly benefits is a kind of forfeiture." (quotation omitted) (citing cases)).

The Court therefore denies Ecolab's motion to dismiss Count III as to Statton.

---

benefit"); *Belknap v. Partners Healthcare Sys., Inc*, 19-CV-11437 (FDS), ECF No. 33 (D. Mass. Jan 24, 2020) (dismissing section 1053 claims *with* prejudice on similar grounds).

## II.    SUFFICIENCY OF STATTON'S ALLEGATIONS

Ecolab also argues that Counts I–III as to Statton should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  As to Counts I–III, Ecolab argues that Statton has failed to state a claim because the SAC does not plausibly allege the amount of Statton's accrued benefit, the specific monthly amount that Statton currently receives under the Plan, nor the amount he would receive by applying section 417(e) actuarial assumptions.

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff.  *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).  However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations.  *Id.*  In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss.  *See* Fed. R. Civ. P. 12(d).  Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings.  *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (quotation omitted).  The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quotation omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a

14

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Here, the First Amended Complaint was amended to include allegations concerning Statton, a new Plaintiff. (*See* SAC.) The only substantive changes to the SAC, however, are paragraphs 29 and 70, which describe Statton's claim. Ecolab correctly observes that neither paragraph 29 nor 70 provides the specific amount Statton is receiving under the Plan nor the amount that he would be receiving had Ecolab applied the 417(e) assumptions, even though this information is provided for Bennett and Wilde. (*Compare id.* ¶¶ 29, 70 *with id.* ¶¶ 27–28, 68–69.) Sealed Exhibit E (Doc. No. 124), which was attached to Ecolab's Declaration in Support of its Motion to Dismiss, however, includes Statton's Benefit Calculation form, which provides his monthly benefit (at age sixty-six, his age at benefit commencement) as $1,752.59.[5]

The parties dispute whether the Court should consider Exhibit E. The Court concludes that it can. As Ecolab notes (*see* Doc. No. 120 at 25), when adjudicating Rule 12(b)(6) motions, "courts are not strictly limited to the four corners of complaints" but may

---

[5] Furthermore, Altman's expert declaration provides Statton's SLA ($1,752.59) and shows that he is being paid $75.36 less than he would if Ecolab used the 417(e) assumptions. (Doc. No. 130 at 8.)

"additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation modified). The parties appear to agree that benefit election forms are incorporated into ERISA complaints. (Doc. No. 120 at 26 ("Because this is an ERISA case, the Court may consider . . . the benefit election forms showing the calculations of Plaintiffs' benefits." (citing cases); Doc. No. 129 at 33 n.12.) In addition, neither party questions the authenticity of this document. For these two reasons, the Court concludes that it can consider Statton's benefit election form when deciding the sufficiency of the allegations in the SAC.

Ecolab also argues that Exhibit E is not sufficient to state a claim because this exhibit includes Statton's age 66 SLA, not his age 65 SLA. (Doc. No. 131 at 15.) In response, Plaintiffs argue that the distinction Ecolab makes is immaterial because "any SLA benefit amount that is multiplied by a conversion factor that is less than ERISA requires will result in an unlawfully reduced JSA benefit." (Doc. No. 129 at 32.) Plaintiffs' argument is more persuasive. While the allegations would more clearly state a claim of an ERISA violation as it relates to Statton if the SAC or Exhibit E included Statton's age 65 SLA, the allegations are sufficient because they assert that the SLA-to-JSA factor applied to all Plaintiffs—including Statton—relies on outdated actuarial assumptions. (SAC ¶¶ 12, 27–29, 66; *see also* Doc. No. 130 at 6–8.) Thus, it is immaterial whether the calculation begins with Statton's age sixty-five or age sixty-six SLA because the SAC plausibly alleges that any starting amount is derived from the outdated mortality tables.

16

For these reasons, the Court denies Ecolab's motion to dismiss Count I as to Statton.

### III.    TIMELINESS OF COUNT IV

Plaintiffs bring claims for breach of fiduciary duties related to the alleged violations of ERISA in Counts I–III of the Amended Complaint.  (SAC ¶¶ 123–134.)  Ecolab moves to dismiss Plaintiffs' fiduciary claims as time-barred.  The Court agrees and grants the motion to dismiss Count IV.[6]

ERISA requires that actions for fiduciary breach be commenced within six years of "the date of the last action which constituted a part of the breach or violation" or "the latest date on which the fiduciary could have cured the breach or violation."  *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 180 (2020) (quotation omitted); *see also* 29 U.S.C. § 1113(1)(A).  The Supreme Court has categorized this six-year time limit as a statute of repose.  *Sulyma*, 589 U.S. at 180.

The parties do not agree on the last action that constituted a part of the alleged breach.  Ecolab argues that the date of the last action is the date on which each Plaintiff commenced their benefits.  (Doc. No. 120 at 31.)  It is undisputed that Bennett commenced his benefits on December 1, 2014; Wilde commenced his benefits on May 1, 2018; and Statton commenced his benefits on August 1, 2018.  (Doc. No. 122 at 3; Doc. No. 123 at 2; Doc. No. 124 at 2.)  Thus, under Defendants' view of section 1113(1)(A), Bennett's claim of fiduciary breach expired on December 1, 2020; Wilde's claim expired on May 1,

---

[6] Ecolab also argues that the Court should dismiss Count IV because the Plan Administrator's conduct as described in this Count is not fiduciary in nature.  Given the Court's conclusion that the claims are time-barred, however, it need not address this alternative argument.

2024; and Statton's claim expired on August 1, 2024. Plaintiffs disagree, arguing that the last action constituting a part of the breach occurred the last time the Plan Administrator provided misleading information, failed to ensure that the Plan complied with ERISA, or applied Plan terms that violated ERISA to any Plaintiff. (Doc. No. 129 at 42.) Under this theory, the relevant action "occurred in 2020 or later" when the Plan was amended to use updated mortality tables "for some, but not all participants" and the Plan Administrator "fail[ed] to ensure that the Plan complied with ERISA for all participants at that time." (*Id.* at 43.) Therefore, under Plaintiff's view, any and all claims initiated before 2026 are timely.

The Court agrees with Ecolab. A statute of repose "effects a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Sulyma*, 589 U.S. at 180 (citation modified). Contrary to this purpose, under Plaintiffs' view, an employer's breach recurs every time there is an update to a plan because each update fails to remedy the previous breach. Such an understanding render virtually meaningless the six-year statute of repose and conflicts with well-settled law. *See Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 523 (9th Cir. 1991) (O'Scannlain, J., concurring), *as amended on denial of reh'g and reh'g en banc* (Dec. 6, 1991) ("The plaintiffs and the district court have confused the failure to *remedy* the alleged breach of an obligation with the commission of an alleged *second* breach, which, as an overt act of its own, recommences the limitations period."); *see also Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 270 (8th Cir. 2004) ("[A]cts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations."

18

(quotation omitted)).  Bennett's claim under Count IV falls outside of the six-year statute of limitations and should be dismissed.

The Court now must consider whether Wilde's and Statton's claims relate back to Bennett's.  Rule 15(c) of the Federal Rules of Civil Procedure governs the relation back of amended pleadings, and although an Advisory Committee note contemplates that a newly-added plaintiff may be permitted to relate back, Fed. R. Civ. P. 15(c) Notes of Advisory Committee on Rules—1966 Amendment, this doctrine permits untimely claims to be deemed timely when they relate back to an original, timely pleading.  *See Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003) ("The relation back doctrine allows untimely claims to be deemed timely by treating the claims as if they had been filed when the *timely* claims were filed." (emphasis added)).  Under this doctrine, the original pleading must itself have been timely filed.  *Berry v. St. Louis Pub. Schs.*, No. 4:23-CV-1183 RLW, 2024 WL 5660823, at *4 (E.D. Mo. Mar. 19, 2024) ("[I]t strains reason to argue that one untimely complaint can be saved by relating back to another untimely complaint." (quotation omitted) (quoting *Norman v. Massey Enters.*, No. 1:17-CV-194 SNLJ, 2019 WL 2357360, at *2 (E.D. Mo. June 4, 2019))).  "Stated otherwise, it simply makes no sense to hold that a complaint that was dead on arrival can breathe life into another complaint." *Id.* (quotation omitted).

In this case, as noted above, the original pleading commenced on February 21, 2024—almost four years after Bennett's claim expired on December 1, 2020.  (Doc. No. 1.)  Wilde's claim cannot relate back to an untimely original pleading, and Wilde's own claim is time-barred because he was added as a plaintiff in the FAC on June 14, 2024—

19

over a month after his claim expired on May 1, 2024.  Similarly, Statton's claim cannot relate back to the original untimely pleading and his own claim is time-barred because he was added as a plaintiff in the SAC on July 16, 2025—almost a year after his claim expired on August 1, 2024.

Therefore, the Court grants Ecolab's motion to dismiss Count IV as to all three Plaintiffs.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Ecolab's Motion to Dismiss (Doc. No. 118) is GRANTED IN PART and DENIED IN PART, as follows:

1.   Counts I, II, and III as to Plaintiffs Bennett and Wilde are DISMISSED WITH PREJUDICE.

2.   Count II as to Plaintiff Statton is DISMISSED WITH PREJUDICE.

3.   Count IV as to all Plaintiffs is DISMISSED WITH PREJUDICE.

4.   The remainder of Ecolab's Motion to Dismiss is DENIED.

Dated:  March 24, 2026                          /s/ *Jeffrey M. Bryan*
                                                Judge Jeffrey M. Bryan
                                                United States District Court

20